No. 44,186

In the Matter of the Estate of Louisa Tompkins, Deceased. (DAVE CRAIG, MRS. DAVE CRAIG, MARGARET DONOVAN ALLEN, WILLIAM J. DONOVAN, CHARLES DONOVAN, DOROTHY DONOVAN EASLEY, CLARENCE DONOVAN, CHARLOTTE DONOVAN TITEL, MRS. RICKIE DONOVAN, *Appellees*, v. LOUISE HILDEBRAND and IDA M. SCHMIDT, Administrator C. T. A. of the Estate of Charles P. Tompkins, Deceased, *Appellants*.)

(407 P. 2d 545)

Opinion filed November 6, 1965.

*Robert M. Bond*, of El Dorado, argued the cause, and *L. J. Bond*, of El Dorado, was with him on the brief for the appellants.

*Terence D. O'Keefe*, of Atchison, argued the cause and *Maurice P. O'Keefe, Steadman Ball, Dolan McKelvy* and *Maurice P. O'Keefe, Jr.*, of Atchison, and *R. C. Woodward* and *H. Pauline Woodward*, of El Dorado, were with him on briefs for appellees.

The opinion of the court was delivered by

KAUL, J.: This action was commenced in the Probate Court of Butler County, Kansas, in the estate of Louisa Tompkins, Deceased, to construe the joint and mutual will of the said Louisa Tompkins and her husband Charles P. Tompkins. The petition was filed by Charlotte Donovan Titel, a residuary legatee of said will. Subsequently an action was filed in the District Court of Butler County, Kansas, by plaintiffs Dave Craig and Mrs. Dave Craig to declare certain alleged gifts void and to compel the defendant Louise

Hildebrand to deliver to Ida M. Schmidt, Administrator C. T. A. of the estate of Mr. Tompkins, properties which had been given to the defendant Hildebrand by Mr. Tompkins immediately after the death of his wife. The action to construe the will in the probate court was transferred to the district court and both cases were consolidated for trial. Trial was had before the court, and a memorandum opinion was filed in which the court found for the plaintiffs that the will involved was joint, mutual and also contractual and that the survivor could not dispose of the property except for necessities. The trial court further ordered the defendant Hildebrand to return the gifts received from Mr. Tompkins to the administrator C. T. A. to be inventoried in his estate.

The post trial motions of the defendant Hildebrand were argued and overruled by the court, and she has appealed.

None of the facts are seriously disputed and are as follows:

In November of 1956 Charles P. Tompkins and Louisa Tompkins, his wife, executed a joint and mutual last will and testament prepared by Walter F. McGinnis, an attorney of El Dorado, Kansas. The Tompkins owned personal property of the approximate value of $24,554.43, all of which was held in joint tenancy.

Mrs. Tompkins died on March 26, 1962, at the age of 84. Mr. Tompkins died on August 15, 1962, at the age of 87. They left no surviving children. Mrs. Tompkins had a brother, Oscar Zondler, who was left one dollar in the will, a sister, Mrs. Edith Lewis, who was omitted from the will, and another sister and two brothers who predeceased Mrs. Tompkins leaving no survivors. Defendant Louise Hildebrand, a daughter of Edith Lewis, is a niece of Mrs. Tompkins and a residuary legatee together with the plaintiffs herein. Mr. Tompkins left no known heirs.

The plaintiff Mrs. Rickie Donovan is a first cousin of Mrs. Tompkins. The other plaintiffs, Margaret Donovan Allen, William J. Donovan, Charles Donovan, Dorothy Donovan Easley, Clarence Donovan and Charlotte Donovan Titel, are the children of Tim Donovan (now deceased) and Rickie Donovan, and as such are first cousins, once removed, of Mrs. Tompkins. The plaintiffs, Dave Craig and Mrs. Dave Craig were not related to the Tompkins but friends of their deceased daughter, Edith May.

In the early part of their married life the Tompkins lived in Kansas City, Kansas, and operated a bakery. After the death of their daughter Edith May, the Tompkins moved to El Dorado,

Kansas, and opened a bakery there. Charlotte Donovan Titel and Mrs. Tompkins corresponded regularly and visited back and forth. In a letter written about 1935 or 1936 Mrs. Tompkins asked that Mrs. Rickie Donovan send her a list of all the names of her children and their addresses as they wanted to remember them in their will.

The defendant Hildebrand had known the Tompkins since 1935. Her mother, Edith Lewis, a sister of Mrs. Tompkins, worked in the bakery at El Dorado for some time.

The scrivener of the will, attorney McGinnis, owned property on both sides of the Tompkins bakery in El Dorado. He frequently visited with the Tompkins and talked to them about their estate from time to time over a period of a couple of years. As a result of the conversations and at the request of Mrs. Tompkins, although both were present, he wrote the will in November of 1956.

After the death of Mrs. Tompkins on March 26, 1962, Mrs. Hildebrand went to El Dorado on April 2, 1962, and saw Mr. Tompkins. The next day, April 3, 1962, she and attorney George S. Benson obtained the will from the Probate Court and read it. On the same day the following property was transferred as follows:

(*a*) A savings account in the Citizens State Bank, El Dorado, Kansas, in the amount of $3,128.95, to Charles P. Tompkins and defendant Hildebrand, as joint tenants.

(*b*) A savings account in Eureka Federal Savings & Loan Assoc., El Dorado, Kansas, in the amount of $4,015.00, to Charles P. Tompkins and the defendant Hildebrand, as joint tenants.

(*c*) .70 shares of R R Building Loan & Savings Assoc., fully paid shares, Newton, Kansas, of the value of $7,000.00 to the defendant Hildebrand, solely.

On approximately May 3, 1962, 60 shares of Investors Royalty Co., Inc., in the amount of $60.00 were transferred to Charles P. Tompkins and the defendant Louise Hildebrand, as joint tenants.

The body of the will is as follows:

"WE, Charles P. Tompkins and Louisa Tompkins, both of 609½ West Central Street, El Dorado, Butler County, Kansas, do make and declare this to be our joint and mutual last will and testament, hereby revoking any and all other former wills by either of us heretofore made.

"First. We direct all just debts and funeral expenses be fully paid.

"Second. All property, whether jointly or separately held and whether real or personal owned by either of us is hereby devised and bequeathed to the survivor, with the right of disposal.

"Third. At the death of both of us it is our will and desire that all our property be converted into cash and that in doing so our household goods and

personal belongings be forthwith sold at public auction to the highest bidder for each item.

"Fourth. We devise to Oscar Zondler of Kansas City, Kansas, the sum of one dollar in cash.

"Fifth. All of the cash so accumulated, after payment of debts and costs of administration, and payment of the above one dollar specific bequest shall be divided into nine equal parts and each of said equal parts shall be paid to:

"1. Mr. and Mrs. Dave Craig, or the survivor thereof, of 211 Ashley Rivers Road, Charleston 34, South Carolina.

"2. Mrs. Louise Hildebrand, 6434 East Sixteenth Street Terrace, Kansas City 26, Missouri.

"3. Mrs. Margaret Donovan Allen, 507 Kemp Street, Leavenworth, Kansas.

"4. William J. Donovan, 925 Tenth Avenue, Leavenworth, Kansas.

"5. Charles Donovan, 608 West Ninth Avenue, Leavenworth, Kansas.

"6. Mrs. Dorothy Donovan Easley, 608 Ninth Avenue, Leavenworth, Kansas.

"7. Clarence Donovan, 931 Ohio Avenue, Leavenworth, Kansas.

"8. Mrs. Charlotte Donovan Titel, 318 Pott St., Leavenworth, Kansas.

"9. Mr. Tim Donovan and Mrs. Rickey Donovan, or the survivor thereof, 608 Ninth Avenue, Leavenworth, Kansas.

or if all of the beneficiaries of any share be deceased then the number of equal divisions shall be reduced accordingly and be divided among the survivors of the said nine above so that each party or couple shall share the same.

"Sixth. It is our will and express desire that our bodies be cremated.

"Seventh. We nominate and appoint William R. Mannion as our executor and request the Court that he be so appointed.

"IN WITNESS WHEREOF, we have hereunto set our hands at El Dorado, Kansas, this        day of November, 1956.

Charles P Tompkins<br>Louisa Tompkins"

It is agreed by the parties that there are two issues raised by this appeal: (1) Did the trial court err in ruling that the will was a joint, mutual and contractual will and that the survivor could transfer property only for necessities and in ordering the defendant Hildebrand to redeliver to the defendant Schmidt the properties transferred to her by the survivor to be distributed equally to the residuary legatees? And, (2), Did the trial court err in admitting the testimony of the scrivener, Walter F. McGinnis, concerning conversations he had with the testators about their estate planning and the drawing of the will?

The determinative question presented here by the pleadings and the agreed statement of points for appellate review is the same as presented to the trial court, i. e., what type of estate did Charles P. Tompkins acquire in the property under the joint will at the

death of Louisa under the second paragraph of the will? The answer to this question depends upon a proper interpretation of the will.

The firmly established rule in this jurisdiction for the construction of wills, to which all other rules are subordinate, is that the intention of the testator as garnered from all parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator. In construing a will the court must put itself as nearly as possible in the situation of the testator when he made the will and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. (*Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276 and the many cases cited therein.)

More recent cases reflecting the rigid adherence to the rule in this jurisdiction are: *In re Estate of Freshour*, 185 Kan. 434, 345 P. 2d 689, *In re Estate of Roberts*, 190 Kan. 248, 373 P. 2d 165, and *Parsons v. Smith, Trustee*, 190 Kan. 569, 376 P. 2d 899.

Reference is also made to 5 Hatcher's Kansas Digest (Rev. Ed.), Wills, ¶ 101; West's Kansas Digest, Wills, ¶¶ 439, 440 and 441.

We shall first consider the nature of the will in question. The trial court stated in its opinion, "It is the opinion of the court that the terms of the will show that the will was joint, mutual and contractual." A careful examination of the language used can only lead to the conclusion that the will in this case was the result of an agreement or contract of the testators. In the declaration the testators state that "We" do make and declare this to be "our" joint and mutual last will. They direct that it is "our" will and desire that "our" property be converted into cash and that "our" household goods be forthwith sold at auction. They use the plural "we" in devising one dollar to Oscar, clearly indicating that they had agreed that he should not share in the estate. It is directed that the cash accumulated and remaining after payment of debts and the $1.00 specific bequest be divided into nine equal parts and paid to the carefully listed beneficiaries. They carefully provided for disposition of a share in case of a lapse of any residuary bequest resulting from the death of any beneficiary. All of these terms as used herein clearly indicate an agreement by the testators as to the terms and provisions and the intention that they each be bound

thereby. Examples of construction from similar language may be found in *Beall v. Hardie*, supra, *In re Estate of Weidman*, 181 Kan. 718, 341 P. 2d 327, *In re Estate of Adkins*, 161 Kan. 239, 167 P. 2d 618, *Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421.

Appellants claim that even though the will is contractual in nature the survivor would still have the unlimited right of disposal as to all the property. The position of the appellants cannot be maintained in this regard. Language such as used here has been construed in a number of similar cases to the effect that such language does not authorize the survivor to "give" property away.

In the case of *In re Estate of Buckner*, 186 Kan. 176, 179, 348 P. 2d 818, it was provided that . . . " 'the survivor shall have the right and privilege of selling, mortgaging and disposing of any property coming to him or her by the terms hereof, without restrictions of any kind . . .' " The Buckner will provided for the disposition of property on the death of the survivor in much the same manner as was provided in the Tompkins will. A suit was commenced to have transfers of property made by the survivor declared invalid. In construing the language used the court held that the words selling, mortgaging and disposing did not authorize the survivor, Edward Buckner, to give any of the property away and that such an attempt on his part would be to defeat the intention of the agreement of the testators.

In the case of *In re Estate of Jones*, 189 Kan. 34, 366 P. 2d 792, under the terms of the joint will of Bessie and Charles Jones, all property was bequeathed " 'absolutely and without reservations' ", and at the death of the survivor to be divided equally among their three children and their heirs. It was held that such language did not authorize a gift by Bessie and that Bessie received a life estate with power of disposal only for necessities.

In the recent case of *Parsons v. Smith, Trustee*, 190 Kan. 569, 570, 376 P. 2d 899, it was held that a bequest to the wife with the provision " 'that she shall have full power and authority to sell, mortgage, lease, transfer or otherwise dispose of any of said property and to use all or any part thereof during her life time' " with a bequest over to a nephew, did not authorize the widow to transfer property to a trust and that the estate created in the survivor was a life estate with a qualified power to dispose for her personal use and benefit during her life time and such power did not include the right to gratuitously dispose of property by a trust agreement or otherwise.

We are fully cognizant that each case involving the construction of a will must be determined, to a great extent, from the precise language used therein and offers little aid in the decision of other cases. Therefore, we do not deem it necessary to undertake to review the many cases cited by industrious counsel which may have had a bearing in assisting us in arriving at the conclusions reached herein.

We conclude, as the trial court did, that the language used in this will gave the survivor a life estate in the property with a qualified power of disposition for personal use and benefit during the survivor's life time but that such qualified power did not include the right to gratuitously dispose of any such property.

Appellants cite the case of *Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527, in which a devise was made to testator's wife to use and dispose of during her natural life and the widow in her life time divided the estate among the three youngest heirs who were residuary legatees under the will. In a suit brought by a subsequent grantee of a part of said property it was held that the defendant and residuary legatee James Monroe Foster could not more than twenty years after he sold the farm for full consideration and after many transfers of the land seek to recover it back and retain the money which he had received as well. The facts clearly distinguish the situation from that involved herein.

In the case of *The Fourth National Bank in Wichita v. The First Presbyterian Church,* 134 Kan. 643, 7 P. 2d 81, the question involved was the power of the survivor to contract for a memorial for his wife rather than a gift as we are concerned with here.

The case of *Stanolind Pipe Line Co. v. Ellis,* 142 Kan. 102, 45 P. 2d 846, involves the right of the survivor to grant an easement for consideration and obviously may be distinguished from a gratuitous conveyance without consideration as attempted in this case.

The proposition that where two people plan their estates and make a joint, mutual and contractual will should have their plan exposed to defeat by the survivor giving away property without consideration in deprivation of the remaindermen is not supported by any cases cited by appellants.

While, in view of the conclusions reached herein, it is not necessary to give consideration to other points raised on the appeal, some comment, in this regard, might serve a useful purpose.

Appellants contend that the trial court erred in allowing Walter

F. McGinnis, scrivener, a witness for the appellee, to testify to conversations with the deceased concerning the interpretation of the will and then based his decision on this testimony which is claimed to have been inadmissible. It is to be noted that the court found that the will was joint, mutual and contractual from the terms of the will itself and merely added the comment, "Not only does the contractual nature of the will seem to be clearly shown by the terms of the will itself, but also, further evidence thereof may be found in the testimony of the scrivener, Walter F. McGinnis, which appears to make it conclusive."

In this connection it is to be noted that this court has often stated that the rule that parol evidence is never admissible to change or vary the terms of an unambiguous will does not render inadmissible extrinsic evidence that a will was executed pursuant to an agreement. (*Eikmeier v. Eikmeier*, 174 Kan. 71, 254 P. 2d 236, and cases cited therein.) The admission of such evidence may result in proving the will to have been non-contractual as well as contractual. See *Menke v. Duwe et al.*, 117 Kan. 207, 230 Pac. 1065, *Frontier Lodge v. Wilson*, 139 Kan. 75, 30 P. 2d 307.

In this case the testimony of scrivener McGinnis concerning his conversations with the testators over a period of a couple of years prior to the drafting of the will, in which the witness testified discussions took place about how their estate was to be planned, was admitted without objection by the court and even though superfluous under the conclusions we have reached, such testimony could properly be admitted under the rule above stated. Subsequent testimony of the witness concerning his opinion as to the contractual nature of the will and his explanation to the testators at the time of execution was admitted over objection by the trial court. In so far as such testimony may be said to tend to change or alter the provisions or terms of the will it was inadmissible. (*Guthrie v. Guthrie*, 130 Kan. 433, 286 Pac. 195; *In re Estate of Schnack*, 155 Kan. 861, 130 P. 2d 591; *In re Estate of Sowder*, 185 Kan. 74, 340 P. 2d 907.) In view of the fact that we have reached our conclusions herein from a careful consideration of the language, terms and provisions of the will itself, such trial error is of no consequence.

The judgment of the trial court is affirmed.