No. 90,570

ELIZABETH GARRETT, CALVIN HUMBLE, PATRICIA L. HUMBLE, and DALE HUMBLE, *Plaintiffs/Appellees,* and CHRISTIE CAMBERS, F/K/A CHRISTIE K. PUFFINBARGER, GREGORY A. PUFFINBARGER, and MELANIE CRUMBY, F/K/A MELANIE PUFFINBARGER, *Third-Party Plaintiffs/Appellants*, v. DELORIS J. READ and DOROTHY BROOKHOUSER, *Defendants/Appellants.*

(102 P.3d 436)

Opinion filed December 17, 2004.

*Jason P. Wiske*, of Law Office of Jason P. Wiske, L.L.C., of Pittsburg, argued the cause, and *Patrick C. Smith*, of Loy Law Firm, L.L.C., of Pittsburg, was with him on the briefs for the third-party plaintiffs/appellants.

*J. Gordon Gregory*, of Wilbert & Towner, of Pittsburg, argued the cause and was on the briefs for the defendants/appellants.

*Richard D. Loffswald, Jr.*, of Girard, argued the cause and was on the brief for the plaintiffs/appellees.

The opinion of the court was delivered by

BEIER, J.: This dispute over the wills of the parents in a blended family requires us to decide whether the district court erred in (1) admitting a scrivener attorney's testimony about a contemporaneous oral agreement between the parents; (2) holding that the wills were contractual, rendering a later will executed by the surviving parent ineffective; and (3) imposing a constructive trust on the estate property or proceeds.

Plaintiffs Elizabeth Garrett, Calvin Humble, Dale Humble, and Patricia Humble are the children of John Humble. In 1967, their father married Sarah Puffinbarger, who had two daughters, defendants Deloris Read and Dorothy Brookhauser, and one son, Gary Lee Puffinbarger, from her previous marriage. Gary eventually predeceased his mother, leaving Sarah three of her grandchildren, third-party plaintiffs Christie Cambers, Gregory Puffinbarger, and Melanie Crumby.

In 1984, lawyer Timothy Fielder prepared nearly identical wills for Sarah and John. Each will first directed that any funeral expenses and debts be paid from the estate. Each will also provided that one of Sarah's daughters would receive a grandfather clock. The remaining estate was bequeathed to the surviving spouse "absolutely." If one spouse predeceased the other, or if the spouses died at the same time, each will provided that the rest of the estate was to be divided into sevenths. One-seventh would be distributed to each of the six surviving children of the two spouses. The remaining one-seventh would be split evenly among Gary's children.

John died in October 1984, and his entire estate passed to Sarah.

In 1993, Sarah met with Fielder and executed a new will, revoking her 1984 will. The 1993 will retained the grandfather clock provision, but it changed the disposition of the rest of Sarah's estate, directing that it be divided into only two equal shares, one for each of her daughters. John's four children and Gary's three children were disinherited.

Sarah died in October 2001.

John's children filed this lawsuit, seeking a constructive trust on four-sevenths of the estate property. They alleged the 1993 will was invalid because the 1984 wills had been contractual. Gary's children intervened as third-party plaintiffs, also arguing that the 1984 wills were contractual and that Sarah could not violate her agreement with John by denying them their one-seventh share.

Plaintiffs and third-party plaintiffs both relied on the 1984 wills' reciprocal provisions as evidence of the contract between Sarah and John. Plaintiffs also relied on Fielder's deposition testimony.

Fielder testified that an agreement existed between Sarah and John at the time they executed their 1984 wills. He had explained joint and mutual wills to them and suggested including contractual language in the documents. Although they agreed they wanted contractual wills, they wanted the surviving spouse to be able to liquidate estate assets and spend all of the proceeds, if necessary. They also believed that an equal distribution among their seven children or their offspring would best reflect the assets each had brought into the marriage; they wanted the surviving parent to be prevented from changing the shares designated for the deceased

parent's children; yet they wanted the surviving parent to be able to alter the shares of that parent's own children. Fielder said this was the intention behind the use of the word "absolutely" in the wills.

Fielder also testified that, before Sarah executed her 1993 will, he informed her that she and John had entered into an agreement. Sarah told him she had taken care of John's children outside of the will by means of joint property and investments. Fielder prepared the 1993 will in reliance on this statement.

Defendants and third-party plaintiffs filed motions in limine. Defendants contended Fielder's testimony should be barred as parol evidence contradicting the wills. Third-party plaintiffs argued Fielder's testimony was admissible only to prove the agreement to leave the estate to the children and grandchildren in sevenths; they asserted any further testimony from Fielder was inadmissible parol evidence. The district court denied the motions in limine, relying on *In re Estate of Chronister*, 203 Kan. 366, 454 P.2d 438 (1969), and *In re Estate of Tompkins*, 195 Kan. 467, 407 P.2d 545 (1965). Thus all of Fielder's testimony was admitted into evidence.

All parties filed motions for summary judgment. The district court found the evidence of an agreement between Sarah and John was uncontroverted. As a result, Sarah's 1993 will could not alter the 1984 wills' designation of shares for John's children but could alter the shares designated for her own children. Thus the district court granted plaintiffs' motion for summary judgment, denied defendants' motion for summary judgment, and denied third-party plaintiffs' motion for summary judgment. The district court imposed a constructive trust in favor of plaintiffs in an amount equal to four-sevenths of the worth of Sarah's estate that had passed to the defendants.

Defendants and third-party plaintiffs appealed to the Court of Appeals, and this court transferred the case pursuant to K.S.A. 20-3018(c).

### Standard of Review

Our standard of review on appeal from summary judgment is well settled:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

All three groups of parties filed dispositive motions in the district court. There were no genuine issues of material fact, which made this case amenable to consideration for summary judgment. We therefore turn to discussion of the controlling legal issues.

### Admission of Attorney Scrivener's Testimony

Generally, "[a]ll relevant evidence is admissible. K.S.A. 60-407(f). Relevant evidence is defined as 'evidence having any tendency in reason to prove any material fact.' K.S.A. 60-401(b)." *State v. Dreiling*, 274 Kan. 518, 549, 54 P.3d 475 (2002). There can be no serious question in this case regarding the relevance of the scrivener's testimony.

Beyond relevance, the admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence is abuse of discretion. See *Wendt v. University of Kansas Med. Center*, 274 Kan. 966, 975, 59 P.3d 325 (2002). An abuse of discretion must be shown by the party attacking the evidentiary ruling and "exists only when no reasonable person would take the view adopted by the district court." *Jenkins v. T.S.I. Holdings, Inc.*, 268 Kan. 623, 633-34, 1 P.3d 891 (2000).

Defendants argued that the 1984 wills were unambiguous and that Fielder's testimony therefore was barred by the parol evidence rule. In fact, our previous cases do not establish ambiguity as the analytical touchstone defendants want to make it.

This court has held:

"Extrinsic evidence is admissible in connection with the instruments themselves to show that separate wills, which are mutual and reciprocal in their bequests and devises, were executed in pursuance of an agreement between the testators, notwithstanding the absence of recitals in the wills designating or referring to such agreement. Such evidence may consist of writings, acts and declarations of the parties, testimony of other persons, and evidence of all the surrounding facts and circumstances." *Eikmeier v. Eikmeier*, 174 Kan. 71, Syl. ¶ 1, 254 P.2d 236 (1953).

This court has also stated that "the rule that parol evidence is never admissible to change or vary the terms and provisions of an unambiguous will does not render inadmissible extrinsic evidence that a will was executed pursuant to an agreement." *In re Estate of Tompkins*, 195 Kan. at 474 (citing *Eikmeier*, 174 Kan. 71, Syl. ¶ 2). "The admission of such evidence may result in proving the will to have been non-contractual as well as contractual. [Citations omitted.]" *Tompkins*, 195 Kan. at 474.

In *Eikmeier*, 174 Kan. at 72-73, Fred and Mary D. Eikmeier "concurrently executed separate wills." Mary D.'s will left a life estate in her property to Fred; and, at his death, the estate was to pass to their three children. Fred's will left Mary D. a life estate in a quarter section of land; and, at her death, that land was to pass to their son Lee, with the remainder given to their three children. Neither will mentioned the other, and neither contained contractual language.

Mary died shortly after the wills were executed, and Fred married Mary A. On his wedding day, he executed a deed conveying the quarter section of land to Mary A. at his death.

Lee brought suit to have the wills between Fred and Mary D. declared contractual. Testimony by the attorney who prepared Fred's and Mary D.'s wills was introduced. Fred and Mary A. objected to the testimony. The court held that the attorney's parol evidence could be introduced—not to contradict the written instrument but to prove the existence of the contract between Fred and Mary D. 174 Kan. at 76-81. There was no necessity that the language of the wills be characterized as ambiguous before the parol evidence was admitted.

In *Tompkins*, Charles and Louisa Tompkins executed a joint and mutual will leaving property first to the surviving spouse, then to

their niece, cousins, and friends. Louisa died, and the niece and Charles changed some property to joint tenancy in their names. The other beneficiaries objected. This court relied on *Eikmeier* and upheld the admission of the scrivener's testimony regarding the existence of an agreement between Charles and Louisa. 195 Kan. at 474. We determined that the language of the will and the parol evidence supported the existence of a contract. 195 Kan. at 471-72, 474. Again, no ambiguity in the language of the will was necessary before the parol evidence was considered.

Many other Kansas cases also support the approach taken by the district court here. See, *e.g., In re Estate of Stratmann*, 248 Kan. 197, 207, 806 P.2d 459 (1991) (where wills contain no contractual language, court must "search extrinsic evidence for guidance"); *In re Estate of Wade*, 202 Kan. 380, 387, 449 P.2d 488 (1969) (proof of existence of agreement between testators may be developed through extrinsic evidence); *In re Estate of Zahradnik*, 6 Kan. App. 2d 84, 91-93, 626 P.2d 1211 (1981) (error for district court not to allow extrinsic evidence to establish existence of contract, even though will contained no contractual language, where distributions of property identical and wills use plural pronouns).

It was not an abuse of discretion for the district court to allow Fielder's testimony. The language of the wills supported the existence of a mutual understanding between Sarah and John to leave the bulk of their estate to the surviving parent for full use during that person's lifetime, then to the six children and one set of grandchildren evenly. Testimony regarding such an agreement was not barred by the parol evidence rule. See *Eikmeier*, 174 Kan. 71, Syl. ¶ 1; *Tompkins*, 195 Kan. at 474. Plaintiffs were not required to demonstrate first that the language of the wills was ambiguous in order to admit testimony regarding the oral agreement.

Third-party plaintiffs nevertheless continue to argue that Fielder's testimony was admissible only to the extent that it proved the existence of an agreement regarding distribution of seven equal shares. They claim Fielder's testimony about the further agreement that the surviving parent would have a right to alter the shares of his or her own children should have been inadmissible.

We disagree. Fielder's further testimony about this topic explained more than the choice of the word "absolutely." The testimony did not alter or amend the language of the wills; it further demonstrated the existence of the basic agreement to divide the bulk of the estate into sevenths; and it demonstrated the existence of a sensible limitation on that agreement, reserving to the surviving parent the right to alter the distributions to his or her own children. It was not an abuse of discretion to allow Fielder's testimony regarding this additional facet of the oral agreement between John and Sarah.

### Contractual Wills

"Whether a will is contractual in character involves a question of fact, the determination of which must be established by competent evidence." *In re Estate of Chronister*, 203 Kan. 366, Syl. ¶ 1.

"The firmly established rule . . . for the construction of wills, to which all other rules are subordinate, is that the intention of the testator as garnered from all parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator. In construing a will the court must put itself as nearly as possible in the situation of the testator when he made the will and from a consideration of the situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. [Citation omitted.]" *In re Estate of Tompkins*, 195 Kan. at 471.

The district court accurately described the evidence regarding whether the 1984 wills were contractual as uncontroverted. The only evidence consisted of the language of the wills and Fielder's testimony.

Defendants contend that the 1984 wills were not contractual because no plural pronouns, contractual terms, or mention of consideration appear in their language. This court has stated that use of plural pronouns and contractual terms supports the presumption that wills are contractual, but this is not the end of the inquiry. This court has also held that separate wills without mention of an agreement between the testators, may be contractual wills if that interpretation is supported by the evidence. See *Chronister*, 203 Kan. at 371-72.

In *Chronister*, 203 Kan. at 367, Herbert and Mabel Chronister executed a joint will leaving their estate to the surviving spouse "for his or her own personal use and benefit forever" and then to the nieces and nephews of Herbert. After Herbert died, Mabel changed her will to leave a large portion of the estate to her sister and her sister's children, with the remainder to Herbert's nieces and nephews.

This court reviewed previous cases, finding that in some cases wills had contractual language contained therein, but in other cases "wills have been construed as contractual on the basis of specific provisions or terms, one of the common denominators usually being a provision for the disposition of property after the death of the survivor." 203 Kan. at 369. We decided the joint and mutual will of Herbert and Mabel was contractual in spite of the language stating the estate passed to the survivor forever and said: "[P]rovisions of like nature [in wills] have commonly been said to evidence, in the case of joint wills, an understanding between the joint testators by which they intended to bind themselves." 203 Kan. at 373. We held that identical disposition of property, the use of plural pronouns, the mutual exclusion of heirs, and a "full and explicit provision . . . for disposition of the testators' remaining property after the death of the survivor" in the joint will were indicative of the agreement between them. 203 Kan. at 373.

In *Tompkins*, the will left the property to the surviving spouse with a right of disposal. Although the appellants claimed that meant the survivor had an unlimited right to dispose of the property, this court held the language did not authorize the survivor to breach the agreement between testators. See 195 Kan. at 472-73.

In *In re Estate of Wade*, 202 Kan. 380, 389-90, 449 P.2d 488 (1969), a joint and mutual will contained no contractual language, but this court held that extrinsic evidence proved the existence of an agreement between testators Erman and Wilma Wade. The scrivener testified that Erman and Wilma negotiated the distribution of their property, reached an agreement, and documented that agreement in their will. This court held:

"In the Wade will there is no language stating it to be contractual, nor does the language used supply with clarity the evidence of an underlying obligation.

. . . [Uncontroverted evidence showed] Erman and Wilma bargained until they reached a definite agreement as to the disposition of their property, and they expressed such disposition in the identical portions agreed upon in their joint and mutual will." 202 Kan. at 390.

In an opinion affirmed and adopted by this court, the Court of Appeals set out factors that could be considered to determine whether a will is contractual. See *Bell v. Brittain*, 19 Kan. App. 2d 1073, 880 P.2d 289 (1994), *aff'd* 257 Kan. 407, 893 P.2d 251 (1995). The Court of Appeals stated:

"The fact that a will does not contain a reference to a contract is not conclusive in determining whether a will is contractual. The intent of the testators to be bound by a joint and mutual will need not be expressly recited, but may be determined circumstantially by language and other expressions used in the will. Language indicating a contractual will includes: (1) a provision in the will for the distribution of property on the death of the survivor; (2) a carefully drawn provision for the disposition of any share in case of a lapsed residuary bequest; (3) the use of plural pronouns; (4) joinder and consent language; (5) the identical distribution of property upon the death of the survivor; (6) joint revocation of former wills; and (7) consideration, such as mutual promises." 19 Kan. App. 2d 1073, Syl. ¶ 5.

The *Bell* panel found that a mutual will meeting some of the stated provisions was contractual. 19 Kan. App. 2d at 1077-80. Under the *Bell* facts, the will provided for a distribution at the death of the survivor, used plural pronouns, used language that "appear[ed] to qualify as joinder and consent language[,]" had identical distributions, and evidenced consideration. The will did not provide for a lapsed bequest; nor did it revoke all former wills. 19 Kan. App. 2d at 1078-79. The panel also noted that the family of a predeceased son had been expressly disinherited. 19 Kan. App. 2d at 1079. Based on these factors, the panel held that the will, on its face, evidenced an agreement between the testators "that the parties intended the will to be joint, mutual, and contractual." 19 Kan. App. 2d at 1079-80. As a result, the panel upheld the district court's grant of summary judgment. 19 Kan. App. 2d at 1079-80.

The uncontroverted facts here lead to the same conclusion. The 1984 wills were nearly identical, leaving the entire estate to the surviving parent and then to the children and one set of grandchildren, evenly divided. Both of the 1984 wills left a grandfather

clock to one of Sarah's daughters, and the wills provided for the family of Sarah's predeceased son, evidencing a "full and explicit provision for the disposition" of the estate at the death of the surviving spouse. See *In re Estate of Chronister*, 203 Kan. 366, 373, 454 P.2d 438 (1969). Further, Fielder testified that Sarah and John communicated their wishes to be bound by their agreement with each other to leave a portion of the estate's assets to one another's children. They also wanted the freedom to change the distributions to their own children. Under the circumstances, it is apparent that John and Sarah wanted the surviving spouse to ensure that the children of the deceased parent were included if the estate was not consumed during the surviving parent's lifetime.

The uncontroverted evidence establishes that the 1984 wills were contractual and that Sarah retained the right to disinherit any of her children and grandchildren. Summary judgment in favor of plaintiffs was appropriate. Denial of summary judgment in favor of defendants and third-party plaintiffs also was appropriate.

### Constructive Trust as Remedy

This court has stated:

"A single instrument may be both a will contractual in nature, and a contract testamentary in nature; as a will it is revocable but as a contract it is enforceable; and although a contractual will revoked by execution of a second will, cannot be probated, it may nonetheless be enforced as a contract against the estate of the testator breaching it." *Reznik v. McKee, Trustee*, 216 Kan. 659, Syl. ¶ 2, 534 P.2d 243 (1975).

Sarah's revoked 1984 will was no longer in effect at the time of Sarah's death in 2001. However, because it was contractual, her estate remained subject to its terms. Because the 1984 will could not be probated, plaintiffs were correct to seek imposition of a constructive trust as their remedy.

"A constructive trust arises wherever the circumstances under which property was acquired make it inequitable that it should be retained by the person who holds the legal title." *Logan v. Logan*, 23 Kan. App. 2d 920, Syl. ¶ 6, 937 P.2d 967, *rev. denied* 262 Kan. 961 (1997). To prove a constructive trust, there must be a showing

of one of the two types of fraud: actual or constructive. 23 Kan. App. 2d 920, Syl. ¶ 7.

Actual fraud is not at issue in this case. "Constructive fraud is a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty or purpose or intent to deceive is necessary." 23 Kan. App. 2d 920, Syl. ¶ 7. Two additional elements also must be proved: "[T]here must be a confidential relationship[, and] the confidence reposed must be betrayed or a duty imposed by the relationship must be breached." 23 Kan. App. 2d 920, Syl. ¶ 8.

In *Heck v. Archer*, 23 Kan. App. 2d 57, 927 P.2d 495 (1996), the Court of Appeals was asked to determine whether summary judgment in favor of defendant Deborah Archer was appropriate. The plaintiff, Ralph Heck, argued that there was sufficient evidence to support the imposition of a constructive trust against Archer. Heck claimed that his father, who died intestate, intended all of his property to be divided evenly among his four children, including plaintiff and defendant. However, Archer had been named as the sole beneficiary on all of their father's accounts.

The panel concluded that summary judgment for defendant on the issue of a constructive trust was inappropriate. 23 Kan. App. 2d at 68. For "purposes of imposing a constructive trust, a confidential relationship can be based on an agreement between the owner of property and another who will distribute the owner's property in a specified manner upon the owner's death." 23 Kan. App. 2d at 67. The panel noted that the record reflected the father's wish to pass his estate to his four children. "Whether this [was] sufficient evidence to establish that [defendant] led [the father] to establish or maintain her as the beneficiary on the . . . accounts with the representation that she would distribute those accounts in a specified manner is a genuine issue of material fact." 23 Kan. App. 2d at 68.

In this case, the district court found that there was an agreement between John and Sarah regarding distribution of their property after the death of the survivor. The relationship between spouses qualifies as a confidential relationship. In addition, this confidential

relationship was based on John's trust in Sarah to distribute four-sevenths of the estate to his children. See *Heck*, 23 Kan. App. 2d at 67. The agreement imposed a duty upon Sarah, and she breached this duty by executing the 1993 will and disinheriting plaintiffs. The district court properly imposed a constructive trust.

Affirmed.