(880 P.2d 289)
No. 70,604
71,001

TERRILL WALTER BELL, CHRISTOPHER MARK BELL, PATRICK JAMES BELL, and MICHAEL BRUCE BELL, *Appellees*, v. BYRON BRITTAIN, individually and in his capacities as succeeding trustee of the Thomas W. Howerton Revocable Trust and as executor of the estate of Thomas W. Howerton; MAURINE RUTSCHMAN; and FIRST UNITED METHODIST CHURCH, INC., NEWTON, KANSAS, a Kansas nonprofit corporation, *Appellants*.

Aff'd 257 Kan. 407, 893 P.2d 251 (1995).

1074

Opinion filed September 2, 1994.

*Gregory C. Nye*, of Newton, for appellants.

*John T. Steere, Lyndon W. Vix*, and *Timothy P. O'Sullivan*, of Fleeson. Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellees.

Before ELLIOTT, P.J., BRAZIL, J., and RICHARD W. WAHL, District Judge Retired, assigned.

BRAZIL, J.: Byron Brittain, individually and as succeeding trustee and executor of the Thomas W. Howerton revocable trust and estate; Maurine Rutschman; and First United Methodist Church, Inc., Newton, Kansas, (appellants) appeal from a decision on summary judgment by the district court finding that a joint and mutual will executed by Thomas and Ethel Howerton was contractual in nature. Appellants contend that the will was not contractual, that assets jointly owned by the Howertons and their

daughter Ruby Bell were not subject to the contractual will, that the new joint tenancy arrangement between Thomas and Ruby severed the contractual will, that property acquired by Thomas after the death of Ethel should not be included in the will, that property acquired by Thomas after the death of Ruby should not be included in the will, that the contractual will did not create a vested remainder interest, and that the remainder interest did not vest due to lack of consideration. We affirm.

On September 4, 1985, Thomas and Ethel Howerton, husband and wife, executed a joint and mutual will. The will stated that it was made "in consideration of the mutual testamentary provisions herein contained for the benefit of each other." The will provided that the spouse dying first would devise his or her property to the other spouse and, upon the death of the survivor, all the property would go to the couple's daughter, Ruby Bell. The Howertons stated that they were not making any provision for the family of their deceased son but instead were leaving all their property to Ruby in recognition of her caring for them in their declining years. Much of the property owned by the couple was already held in joint tenancy with Ruby.

Ethel Howerton died on August 16, 1988, and the will was admitted to probate on October 3, 1988. The inventory shows that most of the property passed under joint tenancy, with only Ethel's half-interest in $12,000 of household goods passing under the will.

The accounts that had been held in joint tenancy by Ethel, Thomas, and Ruby were reconveyed into joint tenancy between Thomas and Ruby. They accomplished this reconveyance by changing the signature cards, although the account numbers remained the same.

Ruby died on December 7, 1989. Her will left her estate to Christopher Mark Bell and Terrill Walter Bell.

On April 27, 1992, Thomas executed a new will. The will provided that any assets Thomas had at his death would be poured over into the Thomas W. Howerton Revocable Trust, which was also established on April 27. The beneficiaries of the revocable trust were First United Methodist Church of Newton, Byron Brittain, and Maurine Rutschman.

Thomas died on July 12, 1992. His 1992 will was admitted to probate, and Terrill Walter Bell, Christopher Mark Bell, Patrick James Bell, and Michael Bruce Bell (appellees) filed a claim in the probate case and a separate petition alleging that Thomas' 1992 will was in conflict with the 1985 joint and mutual will, which appellees claimed was also contractual. The district court heard both the claim and petition as part of the probate action.

Both sides filed motions for partial summary judgment based on the question of whether the 1985 will was joint, mutual, and contractual. The district court found that the will was unambiguous and contractual.

Appellants also filed motions for summary judgment on the grounds that even if the will was contractual, the will was of no effect and not enforceable due to later events. These matters were heard based on stipulated facts and arguments of counsel. The district court found the will was enforceable and the property in the Thomas Howerton Revocable Trust was subject to the contractual will.

Appellants first contend that the district court erred in granting summary judgment on the basis that the 1985 will was unambiguous and joint, mutual, and contractual. They contend that the will was at best ambiguous and they should have been allowed to introduce extrinsic evidence to show that the will was not contractual.

This case was decided solely on the basis of documentary evidence and stipulated facts. As a result, this court on appellate review has the same opportunity to examine and consider the evidence as did the court below and to determine de novo what the facts establish. See *Kneller v. Federal Land Bank of Wichita*, 247 Kan. 399, 400, 799 P.2d 485 (1990).

Where the facts are not in dispute, summary judgment is proper. The court must view the facts in the light most favorable to the party defending against the motion, and if reasonable minds could differ regarding the conclusion drawn from the facts, summary judgment must be denied. *Finstad v. Washburn University*, 252 Kan. 465, 468, 845 P.2d 685 (1993).

Appellants, relying on *In re Estate of Stratmann*, 248 Kan. 197, 203-04, 806 P.2d 459 (1991), argue the will must be shown to be contractual by clear and convincing evidence. *Stratmann*

involved the mutual wills of three siblings and required extrinsic evidence to determine if the deceased three siblings intended their wills to be contractual. The court held that the claimants must produce clear and convincing evidence to establish the existence of an alleged contract. 248 Kan. 197, Syl. ¶ 1. However, in this case, unlike *Stratmann*, the court found the will to be unambiguous and it was interpreted to be contractual based on information contained within the four corners of the document. Interpretation of a written instrument is a question of law. *Godfrey v. Chandley*, 248 Kan. 975, 977, 811 P.2d 1248 (1991).

The first question that must be answered is whether the will is unambiguously a joint, mutual, and contractual will. The test is whether the intention of the testator or testatrix can be gleaned from the four corners of the will itself. *McClary v. Harbaugh*, 231 Kan. 564, 567, 646 P.2d 498 (1982). Where a joint and mutual will shows on its face by its terms and provisions that it is contractual, extrinsic evidence is not admissible for the purpose of proving otherwise. *In re Estate of Ciochon*, 4 Kan. App. 2d 448, 452, 609 P.2d 177, *rev. denied* 228 Kan. 806 (1980).

A cursory reading of the will reveals that, while the will is definitely joint and mutual, it does not explicitly state that it is contractual. However, the fact that a will does not contain a reference to a contract is not conclusive. *In re Estate of Stratmann*, 248 Kan. at 204. The intent of the testators to be bound by a joint and mutual will need not be expressly recited, but may be determined circumstantially by language and other expressions used in the will. Language indicating a contractual will includes:

"(1) A provision in the will for a distribution of property on the death of the survivor;

(2) a carefully drawn provision for the disposition of any share in case of a lapsed residuary bequest;

(3) the use of plural pronouns;

(4) joinder and consent language;

(5) the identical distribution of property upon the death of the survivor;

(6) joint revocation of former wills; and

(7) consideration, such as mutual promises." *In re Estate of Zahradnik*, 6 Kan. App. 2d 84, 91, 626 P.2d 1211 (1981).

As to the first factor, the will in this case does make a provision for the distribution of property upon the death of the survivor.

It expressly states that upon the death of the survivor of Thomas and Ethel, the estate is to go to Ruby. Appellants argue that such a factor would be included in any joint will, not merely a contractual one. Nevertheless, it is also one indication that the will is contractual.

The second factor, a carefully drawn provision in case of a lapsed bequest, is not present. Such a provision would certainly have simplified matters in this case. Instead, the will makes no provision for a residuary bequest in case Ruby fails to survive the makers, a situation which ultimately came about.

Appellants argue that this is one of the primary factors in determining whether a will is contractual, and its absence is an indication that the will is not contractual. Appellees, however, assert that this factor is of limited importance because Ruby is a direct descendant and the Howertons would have known that the anti-lapse statute would apply.

Kansas' anti-lapse statute provides that any bequest to a lineal descendant who predeceases the testator will go to his or her issue unless a different decision is mandated by the will. K.S.A. 59-615(a). Therefore, if the Howertons' intent was to leave their estate to Ruby and then to her issue, a specific provision in case of lapse was not necessary. However, it is impossible to ascertain from the will whether that was the intent of the Howertons. Therefore, the will is inconclusive as to this factor.

The third factor to be considered is whether plural pronouns are used throughout the will. A reading of the will reveals that plural pronouns are used exclusively. Appellants again argue that because the will is joint, it would have plural pronouns even if it was not contractual. However, the use of plural pronouns is still a factor to be considered.

The fourth factor concerns the use of joinder and consent language. Exactly what such language consists of has not been fully determined in Kansas. In *Reznik v. McKee, Trustee,* 216 Kan. 659, 675, 534 P.2d 243 (1975), the court stated that joinder and consent language was present when an instrument indicated that the testator was " 'joined herein by my wife' " or " 'joined by my husband.' " Appellants allege that because such language is not present in the Howertons' will, it is not contractual.

However, the will does state that it is made "in consideration of the mutual testamentary provisions herein contained for the benefit of each other." This language appears to qualify as joinder and consent language. Furthermore, where a will is joint and mutual, rather than where there are merely mutual wills, this factor seems to be of lesser importance because both parties will necessarily join in the provisions.

The fifth factor used to determine whether a will is contractual is whether the will contains an identical distribution upon the death of the survivor. The Howertons' will provides that Ruby will be the beneficiary. Appellants attempt to argue that even if the will was not contractual, the property would still have been devised to Ruby because she was the only surviving child and she had taken care of the Howertons in their old age.

However, appellants' argument disregards the fact that the will expressly disinherits the family of a predeceased son, which would not naturally be the distribution unless both parties agreed to do so. Therefore, the fact that the will provides for an identical distribution upon the death of the survivor raises an inference that the will is contractual.

The sixth factor deals with whether the will revokes all prior wills. Appellants argue that because the Howertons' will did not expressly revoke all former wills, it should not be considered contractual. However, it is unknown whether the Howertons had any former will, and even if they did, the execution of the 1985 will would have automatically revoked any prior wills under K.S.A. 59-611. Therefore, this factor is of little importance.

Finally, the seventh factor which helps to determine whether a will is contractual is whether it contains some consideration or mutual promise. Appellants argue that the Howertons' will contains no such consideration or promise, and the fact that the will is joint and mutual alone does not allow for the conclusion that the will is contractual.

However, the will clearly states that it is drawn "in consideration" of the testamentary provisions contained for the benefit of each other. This language, more than any other part of the will, leads to the conclusion that the will is contractual. If the will was not intended to be contractual, there would be no need for this language to be included.

A review of all the pertinent factors set forth in *Zahradnik* leads to the conclusion that the parties intended the will to be joint, mutual, and contractual. As a result, the district court did not err in granting summary judgment on this basis.

Appellants next contend that even if the will was joint, mutual, and contractual, property owned in joint tenancy by Thomas, Ethel, and Ruby was not subject to the terms of the will. Appellants argue that because Ruby had a full interest in the property by virtue of the joint tenancy agreement, the property could not pass under the contractual will.

It is clear that if Ruby had survived Thomas, the property held in joint tenancy would have passed to her under the joint tenancy, not under the will. However, because Ruby did not survive Thomas, the property passed to him absolutely when Ruby died. The question is whether Thomas should be forced by the contractual will to convey that property back to Ruby's estate.

"[A] joint, mutual and contractual will speaks to the property of each testator at the time of his or her respective death and includes all after-acquired property of the survivor unless a different intention appears from the will." *In re Estate of Jud*, 238 Kan. 268, 274, 710 P.2d 1241 (1985). Based on the holding in *Jud*, any property owned by Thomas at the time of his death passed under the will. This includes the property which had been in joint tenancy with Ethel and Ruby.

Notwithstanding the holding in *Jud*, appellants argue that any property acquired by Thomas after Ethel's death should not pass under the will. They try to distinguish the holding in *Jud* by stating that, while the Kansas Supreme Court could have held that after-acquired property is subject to the limitations of a contractual will, it did not. However, we conclude that the court in *Jud* did clearly state this rule. See 238 Kan. at 274. Therefore, absent some indication that after-acquired property is not to be included, appellants' argument must fail. There is no such indication.

Appellants also argue that the signing of new signature cards by Thomas and Ruby terminated the restrictions of the will. They argue that because Thomas and Ruby had possession of the property interests, they had the ability to reconvey the property to

themselves and, thus, take the property outside the terms of the will.

There is no evidence that this was the intent of Thomas and Ruby when they signed the new signature cards. The property was already subject to joint tenancy ownership, and both appellants and appellees stipulated that there was no extrinsic evidence relating to the conveyance. The property continued in the same accounts as before; the only effect of the signing of new signature cards was that Ethel's name was removed.

It is true that Thomas and Ruby together did own all of the required interests in land, Thomas as the joint tenant and Ruby as the joint tenant and beneficiary under the contractual will. Therefore, they could have awarded good title to the property to a third party. Of course, Thomas and Ruby together could have awarded good title to a third party even if they were only joint tenants. There is no indication, however, that Thomas and Ruby intended that the new signature cards should act as a transfer of rights under the contractual will. According to the terms of the will, Thomas was obliged to leave whatever property he possessed at his death to Ruby. The signing of new signature cards does not change this provision outside of any evidence that it was intended to do so.

Appellants next argue that the terms of the contractual will should not apply to property acquired by Thomas after the death of Ruby, but they provide no support for their argument. Ruby had an interest in Thomas' property upon his death as the result of a contractual will. Once one of the parties to a contractual will dies and the other party accepts benefits under the will, the survivor cannot then revoke or alter the terms of the will. As stated above, after-acquired property passes under a contractual will unless the will provides otherwise. As a result, even the death of Ruby did not release Thomas of his obligations under the will and whatever property he had at the time of his death is subject to the will.

Appellants also argue that the will did not create a vested remainder interest in Ruby upon the death of Ethel. According to appellants, because Ruby's rights were not vested when she died, Thomas was not bound to devise the property to her.

In support of this contention, appellants cite *In re Estate of Burcham*, 248 Kan. 897, 906-907, 811 P.2d 1208 (1991). *Burcham* states that because the contractual will did not create a life estate in the survivor, but instead conveyed the estate to the survivor absolutely, and because the will was not probated after the death of the first testator, the rights of the third-party beneficiary to the contractual will did not vest after the death of the first testator. 248 Kan. at 904-07.

However, *Burcham* goes on to state that the survivor was still required to comply with the provisions of the contractual will as the contract had become irrevocable after the death of the first testator. 248 Kan. at 907. The court in *Burcham* held that although the third-party beneficiary had predeceased the survivor, the third-party beneficiary's granddaughter took the interest in her stead. 248 Kan. at 909-10. In the case before us, it does not matter whether Ruby's rights vested upon the death of Ethel; what does matter is that the contract became enforceable at that time. Furthermore, *Burcham* holds that if the will is probated after the death of the first testator, the third-party beneficiary obtains an enforceable interest at that time. 248 Kan. 897, Syl. ¶ 2. It is undisputed that the will was probated after the death of Ethel, the first testator.

Appellants' final argument alleges that Ruby's interest failed to vest due to a lack of consideration. What appellants are really arguing is that Ruby's rights under the contractual will fail because the contractual will is not enforceable. Appellants argue that Thomas never received any benefits from the contractual will and, therefore, there was insufficient consideration for the contract.

In support of this contention, appellants again cite *Burcham*. Appellants argue that *Burcham* stands for the proposition that the survivor must actually benefit from the will for the will to become contractual.

A close reading of *Burcham*, however, indicates that when the survivor of a contractual will actually has the will probated and benefits from it, the third-party beneficiary has a contractual interest which becomes enforceable at that point and vested. See 248 Kan. at 901 (stating that if the survivor probates the will and benefits, the will is irrevocable and enforceable). However, the

court in *Burcham* found that even if the will is not probated and the survivor does not benefit, the survivor is still bound by the terms of the contractual will. 248 Kan. at 903. The only difference is that the beneficiaries do not have a vested interest until the death of the survivor and the gifts to any beneficiaries who predecease the survivor lapse unless saved by the anti-lapse statute. 248 Kan. at 909-10.

In the case before us, it does not matter if Thomas probated the will and benefitted thereby, although it appears that he did both. He is still bound by the contractual will.

In conclusion, although Ruby predeceased Thomas, he was bound by the terms of the contractual will to leave his estate, including after-acquired property, to her. He did not do so, and as a result he breached the contractual will.

Affirmed.