(189 P.3d 573)
No. 98,780

Darrell Mangels, Carl Mangels, and *Involuntarily Joined Plaintiffs*: Ronald Mangels, Donald Mangels, and Robert Mangels, *Appellants*, v. Judith Cornell, *Appellee*.

Opinion filed August 8, 2008.

*Charles E. Owen, II,* of Charles E. Owen, II, P.A., of Garden City, and *S. Lucky DeFries* and *Jeffrey A. Wietharn,* of Coffman, DeFries & Nothern, of Topeka, for appellants.

*William J. Graybill,* of Graybill, Witcher & Ambrosier, of Elkhart, for appellee.

Before GREENE, P.J., MARQUARDT and LEBEN, JJ.

GREENE, J.: This appeal frames for our consideration the construction of a revocable trust and requires that we determine whether the district court erred in validating trust amendments executed after the death of one of the grantors/settlors, which amendments changed the trustees and significantly changed the distribution of income to successor beneficiaries. Appellants Darrel and Carl Mangels, adopted sons of deceased settlor C.L. "Bud" Helwig, challenge the amendments made by their adoptive mother Thelma Helwig after Bud died, arguing the trust unambiguously does not permit amendment or revocation of the trust after the death of one of the settlors. Appellee Judith Cornell argues the district court properly construed the trust as permitting amendment or revocation by either settlor at any time. We construe the trust as joint, mutual, and contractual in nature and not subject to revocation or amendment by a surviving settlor, thus requiring that we reverse the district court and remand for further proceedings.

## Factual and Procedural Background

In March 1996, Bud and Thelma Helwig, husband and wife, executed a revocable trust agreement designated "The Helwig Revocable Trust." The trust was funded with five ¼-sections of farmland and "mineral and royalty interests" in another two and

½-sections, all in Grant County. The trust provided that net income would be distributed to the settlors or survivor and thereafter in one-third shares to each of the Helwig's adopted children, Darrel Mangels, Carl Mangels, and Judith Cornell; and upon the death of such adopted children, their share was to be paid per stirpes to the children of each.

Bud died in March 2004, and in September 2004, Thelma amended the trust to change the successor trustees from Darrel's and Carl's children to Darrel, Carl, and Judith. Then in December 2004, Thelma again amended the trust to provide that after her death, the first $1 million of net income should be paid to Judith, with the remaining net income divided in one-third shares as originally provided. Both of these amendments were challenged in a declaratory judgment action filed by Darrel and Carl in August 2005.

In deciding a motion for summary judgment adverse to Darrel and Carl, the district court held that the trust did not prohibit amendment by Thelma after the death of Bud.

"From a reading of the revocable trust agreement executed by C. L. and Thelma on March 19, 1996, there is absolutely no indication that there was any intention that the trust agreement was a joint, mutual and contractual agreement by the settlors.

. . . .

"Furthermore, this Court finds that the trust as established by C. L. and Thelma allows them or either of them to alter, amend, revoke or terminate the trust."

Following a trial in January 2007, the district court addressed other issues but reaffirmed its summary judgment decision, thus validating the challenged amendments. Darrel and Carl appeal.

### *Standards of Review*

The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 431, 109 P.3d 1146 (2005). The construction of a trust, like that of other writings, " 'may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court.' " *In re Estate of Sanders*, 261 Kan. 176, 181, 929 P.2d 153 (1996) (quot-

ing *Galindo v. City of Coffeyville*, 256 Kan. 455, Syl. 2, 885 P.2d 1246 [1994]). Whether a written instrument is ambiguous is a question of law which we review de novo. *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, 1101, 78 P.3d 480 (2003), *rev. denied* 277 Kan. 928 (2004).

### Did the District Court Err in Construing the Trust to Permit the Amendments by Thelma After the Death of Bud?

Generally, if a written instrument has clear language and can be carried out as written, rules of construction are not necessary. *City of Arkansas City v. Bruton*, 284 Kan. 815, 829, 166 P.3d 992 (2007). When ambiguity exists, however, parol evidence is admissible to ascertain the meaning of the words used in the written instrument. *In re Hjersted Revocable Trust*, 35 Kan. App. 2d 799, 804, 135 P.3d 192, *rev. denied* 282 Kan. 789 (2006).

" '[T]he primary objective of trust law is to carry out the settlor's intent. [Citation omitted.] Consequently, "[i]f the text of the trust indenture is plain and unambiguous, the intent of the trustor (settlor) can be ascertained from the language used. [Citation omitted.] Where construction is necessary [however] the court must put itself in the situation of the trustor when the trustor made the trust instrument and, from consideration of the language used in the entire instrument determine the intention of the trustor. [Citations omitted.] The cardinal rule is that the intention of the trustor as gathered from the whole instrument must control unless contrary to settled principles of law." [Citation omitted.]' " *In re Hjersted Revocable Trust*, 35 Kan. App. 2d at 805 (quoting *Godley v. Valley View State Bank*, 277 Kan. 736, 741-42, 89 P.3d 595 [2004]).

In construing a trust instrument, we approach the issues and apply the same rules of construction as applicable to the construction of wills. K.S.A. 58a-112.

### *Language of the Disputed "Revocability" Provision*

At the heart of this dispute is the proper construction of a provision of the trust entitled "Revocability." It provides:

"13. REVOCABILITY. This trust shall be revocable, and the *Grantors* expressly acknowledges that *they* shall have the right or power, whether *alone* or in conjunction with others, and in whatever capacity, to alter, amend, revoke, or terminate this trust, or any of the terms of this Agreement, in whole or in part." (Emphasis added.)

Remarkably, each of the respective sides of this dispute argues the language of paragraph 13 is clear and unambiguous, but each has quite divergent views of language's meaning. The Mangels contend the language permits the grantors acting together to amend or revoke the trust; Judith contends the language permits either grantor acting alone to amend or revoke the trust. Obviously, the puzzle is determining the settlors' intent in the use of the terms "grantors," "they," and "alone."

Examining the language of paragraph 13, we note that "alone" refers to "they," which refers to "grantors" in the plural. Although not precisely drafted, we believe the language was intended to mean that grantors *collectively* may amend or revoke the trust and that *they* may do so acting *alone* as grantors or in conjunction with others such as guardians or conservators. If the intent had been for *either* of the grantors to have the power to amend or revoke *individually*, the preferred language would have employed such terms or would have expressly permitted *each* of the grantors, whether acting *alone,* with the other grantor, or with others, to amend or revoke the trust. Cornell's argument, as adopted by the district court, requires the term *"alone"* to be construed in an isolated manner rather than in its context; here, we must ask: who is it that may "alone" amend or revoke? Clearly, it is the grantors (plural)—and they alone who may do so.

We conclude that the language of paragraph 13 clearly and unambiguously permits amendment and revocation by *both* grantors.

### Language Elsewhere in the Instrument Bearing on Intent

We must not rely exclusively on the isolated language of the disputed paragraph, however, but rather examine the instrument as a whole. See *In re Estate of Sauder*, 283 Kan. 694, 708, 156 P.3d 1204 (2007). The cardinal rule is that the intention of the trustor as gathered from the whole instrument must control unless contrary to settled principles of law. *Godley*, 277 Kan. at 741-42.

Although the parties failed to argue, either in district court or on appeal, that other terminology in the instrument demonstrated joint, mutual, and contractual intent, we note that the consideration paragraph in the instrument clearly provides that funding the

trust was "in consideration of the foregoing and *mutual covenants and agreements* hereinafter contained." (Emphasis added.) In construing similar language, our court has held that such language "appears to qualify as joinder and consent language" and thus contractual in nature. *Bell v. Brittain*, 19 Kan. App. 2d 1073, 1079, 880 P.2d 289 (1994), *aff'd* 257 Kan. 407, 893 P.2d 251 (1995) (language "in consideration of the mutual testamentary provisions" was joinder and consent language). Here, the language is actually stronger than the language in *Bell*, as it provides that the trust was funded in consideration of "mutual covenants and agreements."

Beyond the language of the consideration paragraph, other aspects of the trust instrument indicate the intent to create a joint, mutual, and contractual trust. Notably, the trust carefully guards against unilateral decisions of either Thelma or Bud as trustees, providing in paragraph 9 that "[a]ll decisions of the Trustees shall be taken unanimously" and requiring a successor trustee be appointed upon the death or other incapacity of either trustee. We believe this provision demonstrates both mutuality and clear agreement that decisions regarding the trust were to be made by *both* Thelma and Bud.

Judith argues on appeal that the use of the phrase "either of them" in paragraph 4 of the trust indicates that the "settlors intended that either of them, acting together or alone, would be empowered to amend or revoke the trust." We disagree. The provision states:

"4. LIMITATION ON POWERS. Notwithstanding anything herein contained to the contrary, no powers enumerated herein or accorded to the trustees generally pursuant to law shall be construed or enable the Grantor, or the Trustees, or either of them, or any other person to purchase, exchange, or otherwise deal with or dispose of the principle or income of the trust estate for less than the adequate and full consideration of money . . . ."

This provision is a limitation on the powers of the trustees and is clearly intended to prohibit any dealing by anyone with trust property at less than arm's length. The fact that such limitation employs and applies to each grantor (singular) merely restricts the power of a singular grantor and does not have significance on the more general intent to create a joint, mutual, and contractual trust. In

fact, the provision is consistent with a contractual instrument in that it prohibits each grantor from taking action detrimental to the interests of the trust at large. Contrary to Judith's contention, we believe the use of the phrase "or either of them" in paragraph 4 demonstrates that the settlors and their counsel were fully capable of phraseology that could have been used in paragraph 13 if the intent was to permit amendment or revocation by each settlor; that provision could have stated "the grantors or *either of them* shall have the right or power . . . to alter, amend, revoke, or terminate . . . any of the terms of this [trust] Agreement."

Finally, we examine the instrument as a whole for indications of contractual intent. We are guided in this examination by the seven factors generally indicating the intent to be contractually bound by a joint and mutual will:

" '(1) A provision in the will for a distribution of property on the death of the survivor;

" '(2) a carefully drawn provision for the disposition of any share in case of a lapsed residuary bequest;

" '(3) the use of plural pronouns;

" '(4) joinder and consent language;

" '(5) the identical distribution of property upon the death of the survivor;

" '(6) joint revocation of former wills; and

" '(7) consideration, such as mutual promises.' [Citation omitted.]" *Bell,* 19 Kan. App. 2d at 1077.

As to the first factor, the trust clearly provides for the distribution of property upon the death of the survivor. That provision, as amended after the death of Bud, is the subject of this appeal.

As to the second factor, a carefully drawn provision in case of a lapsed bequest, is not present.

As to the third factor, we note that the trust generally employs the plural in referring to "Grantors." We count 10 such plural references in the trust and only 2 mentions of "Grantor" in the singular.

As to the fourth and seventh factor, we have already emphasized the reference in the consideration provision to "mutual covenants and agreements," which is both joinder and consent language and a clear exchange of mutual promises.

As to the fifth factor, the trust provides for an identical distribution of property upon the death of the survivor.

As to the sixth factor, there is no joint revocation of former wills, but we do not find this significant where, as here, the instrument is one establishing a trust.

Our application of the seven factors supports our conclusion that the trust is contractual in nature, with five factors supporting contractual intent, one factor to the contrary, and one factor of no application. Examination of the instrument as a whole results in our conclusion that the intent of the grantors/settlors was to create a joint, mutual, and contractual revocable trust.

## Rules of Construction

Having concluded the language of the instrument is not ambiguous and demonstrates an intent to create a joint, mutual, and contractual revocable trust, resort to the rules of construction is not necessary. *In re Hjersted Revocable Trust*, 35 Kan. App. 2d at 804. Even if we were to conclude, however, that the language of the instrument is ambiguous, an application of the rules of construction supports our conclusion.

First, we note that the grantors amended the trust on one occasion prior to the death of Bud, and *both* grantors joined in this amendment. Even though the amendment was intended to effect a straightforward change in successor trustees and could have been executed by either of the grantors if permitted, the execution by both grantors demonstrates an understanding that amendments required the consent and participation of both grantors. Subsequent conduct of parties to a contract or written instrument may aid in the interpretation of controversial provisions. If parties to a contract, subsequent to its execution, have shown by their conduct that they placed a common interpretation on contract, this interpretation will be given great weight in determining meaning to be attributed to provisions in question. See *Heyen v. Hartnett*, 235 Kan. 117, 123, 679 P.2d 1152 (1984); *Reznik v. McKee, Trustee*, 216 Kan. 659, 675, 534 P.2d 243 (1975).

Second, we note that the scrivener of the instrument was not permitted to testify, but the Mangels' counsel proffered his testi-

mony. He would have testified, absent the pretrial order, that "his intent as scrivener of the trust was that it would take both of the trustees to [e]ffect any amendment to the trust and not just one of the trustees either before or after the death of anyone." If the trust language is found to be unclear and ambiguous, any extrinsic evidence relative to the grantors'/settlors' intent at the time the initial trust instrument was prepared would be of particular interest, including the scrivener's testimony. Testimony of the scrivener of a written instrument of devise may be admissible to show that the instrument was executed pursuant to an agreement. See *In re Estate of Tompkins*, 195 Kan. 467, 474, 407 P.2d 545 (1965).

We have not attempted an exhaustive application of the rules of construction here, and we recognize that the parties may not have been permitted to introduce evidence that may have been relevant to a comprehensive application. We simply note that based on the record on appeal, any application of the rules of construction would support our conclusion that the intent of the settlors was to create a joint, mutual, and contractual revocable trust.

It is tempting to conclude that the disparate views of opposing parties as to the meaning of the disputed language drive a conclusion of ambiguity, but we have resisted this temptation. Instead, we conclude that when the disputed language is examined in context and within the instrument as a whole, the clear intent is the creation of a joint, mutual, and contractual trust instrument. Notwithstanding that conclusion, if we had concluded there was ambiguity, application of the rules of construction would lead us to the same conclusion.

The district court erred in its construction of the trust. Summary judgment should have been entered for the Mangels, thus invalidating the amendments after the death of Bud. We express no opinion as to other issues that may require adjudication on remand. We remand with directions to enter summary judgment for the Mangels and for such other proceedings as may be consistent with our opinion.

Reversed and remanded with directions.