NOT DESIGNATED FOR PUBLICATION

No. 116,752

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CAROLYN KANE and PEGGY LOCKLIN,
*Appellees*,

v.

KEITH LOCKLIN, individually and as Trustee of the
John W. Locklin and Ruth A. Locklin Revocable Trust Agreement,
and
ALLEN LOCKLIN,
*Appellants*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed October 20, 2017. Affirmed.

*John W. Fresh*, of Farris & Fresh Law Offices, of Atchison, and *Charles J. Osborn*, of Atchison, for appellants.

*Richard W. Hird*, of Petefish, Immel, Hird, Johnson, Leibold & Sloan, L.L.P., of Lawrence, for appellees.

Before POWELL, P.J., MALONE, J., and LORI A. BOLTON FLEMING, District Judge, assigned.

PER CURIAM: This appeal arises from a dispute between the beneficiaries of the John W. Locklin and Ruth A. Locklin Revocable Trust Agreement dated April 16, 1997 (Trust). The Trust Agreement was executed on April 16, 1997; Ruth died on May 30, 1997. On November 24, 2009, John, as trustee, and Keith Locklin, John's son acting as

1

substitute trustee, executed a First Amendment to the Trust, largely in favor of Keith and his brother, Allen Locklin. John died on January 8, 2013. Carolyn Kane and Peggy Locklin, sisters to Keith and Allen, filed the underlying action challenging both the validity of the First Amendment as well as the acts of Keith in his capacity of substitute trustee.

At the close of discovery, the district court granted Carolyn and Peggy's motion for summary judgment, (1) holding that the Trust became irrevocable at the death of Ruth, making the First Amendment invalid; (2) denying Keith and Allen's request for an evidentiary hearing on damages and awarding damages to Carolyn and Peggy based on the Trust inventory filed by Keith; and (3) awarding attorney fees to Carolyn and Peggy.

On appeal, Keith and Allen claim (1) that the district court erred in granting summary judgment because the determination of whether a will is contractual is a question of fact precluding summary judgment; (2) alternatively, that the Trust is ambiguous and the district court erred in failing to properly apply rules of construction and in failing to properly consider parol evidence; (3) that the district court erred in denying an evidentiary hearing on the assets, liabilities, and administration of the Trust prior to awarding damages; and (4) that the district court erred in awarding attorney fees to Carolyn and Peggy. Finding no error by the district court, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts that gave rise to this trust dispute are not controverted. Keith and Allen are the sons of John and Ruth; Carolyn and Peggy are the daughters of John and Ruth. On April 16, 1997, John and Ruth created the Trust. The assets of the Trust consisted of various real and personal agricultural properties, a residential home, four automobiles, and financial accounts. The original terms of the Trust directed the trustee

2

to pay certain debts, taxes, and administrative fees of the settlors, after which the trustee was to divide any remaining assets equally among the four children.

Ruth passed away on May 30, 1997, leaving John as the surviving settlor of the Trust. In November 2009, John, as trustee, and Keith, as substitute trustee for Ruth, executed a First Amendment to the Trust. John explained that he was modifying the property distribution because Keith and Allen had aided him in the management of his farming operations. The First Amendment awarded Keith and Allen all the farm ground, livestock, and farm equipment; assets unrelated to agriculture were to be divided between Carolyn and Peggy. In January 2013, John passed away; Keith then succeeded him as the trustee of the Trust.

Regarding Keith's status as substitute trustee, it is unclear under what authority Keith became substitute trustee in order to sign the First Amendment. Under the original Trust, a substitute trustee could only be appointed due to the resignation of a trustee, which did not occur, or both John and Ruth ceasing to act as trustees, which did not occur until John's death. Nonetheless, the legality of Keith's appointment as *substitute trustee* and its impact on the legality of the First Amendment proves to be moot because the First Amendment is otherwise unenforceable, as explained later.

In January 2014, Carolyn and Peggy initiated litigation, alleging that the Trust became irrevocable and unmodifiable following Ruth's death. Carolyn and Peggy prayed for a declaratory judgment, stating that they were entitled to an equal share of the Trust assets per the original terms of the Trust. In June 2016, Carolyn and Peggy filed a motion for summary judgment, maintaining that the Trust had become irrevocable upon the death of Ruth and, as a consequence, the First Amendment was invalid and unenforceable. In response, Keith and Allen filed motions for partial summary judgment. Ultimately, the district court granted Carolyn and Peggy's motion for summary judgment, concluding that the Trust was joint and contractual and that the First Amendment was void and

3

unenforceable. The district court ordered the Trust proceeds to be distributed in accordance with the original Trust Agreement based on a Trust inventory filed by Keith as of John's date of death and awarded half of the attorney fees requested by Carolyn and Peggy to be paid out of the corpus of the trust based on the "amount of litigation and complexity thereof."

Keith and Allen now appeal.

COULD THE JOHN W. LOCKLIN AND RUTH A. LOCKLIN REVOCABLE TRUST DATED APRIL 16, 1997, BE MODIFIED AFTER RUTH'S DEATH?

Keith and Allen argue that the Amendment to the Trust was effective because the Trust was not a contractual trust. They assert that this court is not bound by any prior stipulation regarding the ambiguity of the Trust and that the district court should have considered the parol evidence presented by them. Keith and Allen further allege that the settlors and the scrivener intended the Trust to be modifiable even if one of the settlors died. They also claim that the district court should have required Carolyn and Peggy to prove by clear and convincing evidence that the Trust was contractual and that the application of the seven-factor test found in *Mangels v. Cornell*, 40 Kan. App. 2d 110, 189 P.3d 573 (2008), weighed against a finding that the Trust was contractual.

Carolyn and Peggy claim that the language of the Trust is unambiguous and that the provision addressing modification prohibits amendments to the Trust after the death of a settlor. Carolyn and Peggy argue that Keith and Allen are estopped from claiming that the Trust is ambiguous because they stipulated in district court that the Trust was unambiguous. Carolyn and Peggy also assert that parol evidence cannot be used to determine the meaning of the Trust because the trust is unambiguous, and they argue that the district court correctly applied the seven-factor test found in *Mangels* when it determined that the Trust was contractual.

4

A.   *Is the Trust Ambiguous?*

Whether a trust instrument is ambiguous is a question of law subject to unlimited appellate review. *In re Living Trust of Huxtable*, 243 Kan. 531, 533, 757 P.2d 1262 (1988).

> "When either a patent or latent ambiguity actually exists in a written instrument, parol evidence is admissible to ascertain the meaning of the words used. . . .
>
> . . . .
>
> "'A latent ambiguity is one that is not apparent upon the fact of the instrument alone and that is discovered when it is sought to identify the property, the beneficiaries, etc. . . .
>
> '. . . [A] latent ambiguity is defined as one which is not discoverable until extrinsic evidence is introduced . . . that the description in the [instrument] is defective, or that it applies equally to two or more persons or things. . . .'
>
> In contrast, a patent ambiguity is one which is apparent on the face of an instrument. [Citations omitted.]" *In re Living Trust of Huxtable*, 243 Kan. at 533.

If the language of a trust is clear and can be carried out as written, then parol evidence is inadmissible to determine the meaning of the trust. See *Offerman v. Rosile*, 31 Kan. App. 2d 1055, 1062, 77 P.3d 504 (2003), *rev. denied* 277 Kan. 924 (2004).

Here, the relevant portion of the Trust states:  "*We reserve the right* from time to time *during our lives*, by written instrument delivered to the trustee, to amend or revoke this instrument in whole or in part." (Emphasis added.) The language of the Trust is unambiguous because the terms "we reserve the right" and "during our lives" show that the settlors had to act collectively to amend the Trust. The Trust is silent on the method of modification after the death of one settlor. Therefore, no patent ambiguity exists.

Furthermore, the Trust directed the assets to be divided equally among the Locklin children upon the death of the surviving settlor. Because no question exists as to what was to be distributed to which beneficiary, no latent ambiguity exists. The Trust can be carried out as written, and the terms show that the settlors had the power to revoke the trust during their lives. Therefore, parol evidence should not be used to determine the meaning of the Trust. Because the Trust is clearly unambiguous, it is unnecessary to consider the effect of any stipulations admitting that the Trust is unambiguous.

B.      *Is the Trust Joint and Contractual*?

The rules used to construe the meaning of wills are also used to construe the meaning of trusts. See K.S.A. 58a-112. The intention of the settlors gathered from the trust instrument controls unless contrary to the law. *In re Estate of Pickrell*, 248 Kan. 247, 255, 806 P.2d 1007 (1991). Appellate courts determine the legal effect of trust instruments because the construction of a written trust instrument is a question of law subject to unlimited review. See 248 Kan. at 253.

If two settlors intend a revocable trust to be joint and contractual, then the trust becomes irrevocable upon the death of either settlor and the surviving settlor cannot modify the trust. See *Mangels*, 40 Kan. App. 2d at 116. The seven factors used to determine whether multiple settlors intended a will or trust to be joint and contractual are:

> "'(1) A provision in the [trust] for a distribution of property on the death of the [surviving settlor];
> "'(2) a carefully drawn provision for the disposition of any share in case of a lapsed residuary bequest;
> "'(3) the use of plural pronouns;
> "'(4) joinder and consent language;
> "'(5) the identical distribution of property upon the death of the [surviving settlor];

6

"'(6) joint revocation of former wills; and

"'(7) consideration, such as mutual promises.' [Citation omitted.]" 40 Kan. App. 2d at 116 (quoting *Bell v. Brittain*, 19 Kan. App. 2d 1073, 1077, 880 P.2d 289 [1994], *aff'd* 257 Kan. 407, 893 P.2d 251 [1995]).

The first *Mangels* factor weighs in favor of finding the Trust to be contractual because the Trust instrument directs the trustee to distribute the trust assets after the death of the surviving settlor.

The second *Mangles* factor suggests that the Trust was intended to be contractual in nature. The Trust directs the trustee to pay the share of any beneficiary who dies before complete distribution of the assets to the deceased beneficiary's estate. Therefore, a provision for the disposition of a lapsed beneficiary's share is present in the Trust.

The third *Mangels* factor also shows the intent of the settlors to make the Trust contractual. The Trust instrument makes use of plural pronouns, consistently and repeatedly using the terms "we," "us," and "ours" when referring to the settlors.

The fourth *Mangels* factor does not suggest that the Trust was intended to be contractual. This court has previously found that the following language qualified as joinder and consent language: "'in consideration of the foregoing and *mutual covenants and agreements* hereinafter contained.' (Emphasis added.)" 40 Kan. App. 2d at 114-15. No similar language is found in the Trust. However, this factor has been construed as less significant when two testators executed a single will because the testators necessarily had to join in the provisions of the will. *Bell v. Brittain*, 19 Kan. App. 2d 1073, 1079, 880 P.2d 289 (1994), *aff'd* 257 Kan. 407, 893 P.2d 251 (1995). Here, John and Ruth did not create two identical trusts but created a single trust together. Despite an absence of joinder and consent language in the Trust, both settlors necessarily had to join in the

7

terms of Trust. Therefore, the absence of joinder and consent language in the Trust is a minor indicator of a lack of contractual intent.

The fifth *Mangels* factor indicates that the Trust is contractual in nature. The Trust directs the trustee to pay certain debts, costs, and fees and then directs equal distribution to the Locklin children or their estates if any of them predecease the settlors. Therefore, an identical distribution of property to the beneficiaries is present in the Trust.

The sixth *Mangels* factor is not applicable. Nothing in the record suggests that either settlor had a will before they created the Trust. Another panel of this court has previously held that this factor is insignificant when a trust is created. 40 Kan. App. 2d at 117.

The seventh *Mangels* factor does not directly suggest that the Trust was intended to be contractual because consideration such as mutual promises was not exchanged in the Trust instrument. The *Mangels* court relied on express promises found in the trust instrument to satisfy this factor, not implied promises. See 40 Kan. App. 2d at 116; see also *Eggeson v. DeLuca*, 45 Kan. App. 2d 435, 444-45, 252 P.3d 128 (express language relied upon in finding contractual intent), *rev. denied* 292 Kan. 964 (2011).

In the present case, four of the seven *Mangels* factors strongly suggest that the settlors intended the Trust to be joint and contractual. One *Mangels* factor is not applicable because it concerns the creation of a will, not a trust. Two of the *Mangels* factors do not directly support a finding of contractual intent; however, those factors are less significant than the factors weighing in favor of the Trust being joint and contractual. In the end, it is clear the balance of the *Mangels* factors weighs heavily in favor of finding that the Trust was joint and contractual. Therefore, the district court correctly held the Trust became irrevocable upon the death of Ruth.

## DID THE DISTRICT COURT ERR BY GRANTING SUMMARY JUDGMENT?

Next, Keith and Allen assert that whether the Trust is contractual in nature is a factual determination that should have precluded summary judgment.

Carolyn and Peggy argue that the district court properly granted their motion for summary judgment because no issues of material fact existed and they were entitled to judgment as a matter of law. Carolyn and Peggy contend that Keith and Allen cannot manufacture an issue of material fact by presenting parol evidence which contradicts the unambiguous meaning of the Trust.

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]'" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

Keith and Allen cite to *Eggeson* in support of their argument. However, their reliance on *Eggeson* is misplaced. In *Eggeson*, two individuals executed mutual, reciprocal wills. The issue here is factually distinguishable because two settlors created a single trust. No factual issue exists as to whether a contract can be inferred from the execution of *two separate instruments* with identical terms.

The underlying facts which gave rise to this trust dispute are not controverted. The controlling issue before the court is the nature of the Trust. As discussed, the *Mangels* factors weigh in favor of finding that the Trust was joint and contractual. The construction of a written trust instrument is a legal question and not a factual question. See *Pickrell*, 248 Kan. at 253. After determining that the Trust was joint and contractual, the district court correctly found that the Trust became unmodifiable by the surviving settlor. The district court properly granted summary judgment to Carolyn and Peggy because no issues of material fact existed and Carolyn and Peggy were entitled to judgment as a matter of law.

## DID THE DISTRICT COURT ERR BY AWARDING DAMAGES?

Keith and Allen argue that the district court abused its discretion by awarding damages based on the value of the Trust assets at the time of the surviving settlor's death. Keith and Allen contend that the district court should have held an evidentiary hearing to evaluate the current value of the Trust assets because many of the assets were agricultural in nature and the value of such assets fluctuates due to the nature of the farming industry.

Carolyn and Peggy argue that the district court's award of damages based on the value of the Trust when the surviving settlor died was reasonable because that amount is what they were entitled to under the original Trust terms. Carolyn and Peggy contend that subsequent changes in the Trust amount are irrelevant and that they should not have to take a reduced share in the trust assets because Keith and Allen mismanaged the Locklin farm during the course of litigation.

Whether the district court applied the correct measure of damages is a question of law subject to unlimited appellate review. *Peterson v. Ferrell*, 302 Kan. 99, 106, 349 P.3d 1269 (2015). The district court has discretion to apply equitable standards to make the harmed party whole. *Gillespie v. Seymour*, 250 Kan. 123, 143, 823 P.2d 782 (1991).

10

Appellate courts consider whether the district court abused its discretion and not whether the district court fashioned the best remedy. *Peterson*, 302 Kan. at 106 (quoting *In re Conservatorship of Huerta*, 273 Kan. 97, 99-100, 41 P.3d 814 [2002]). "A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *Northern Natural Gas Co. v. ONEOK Field Services Co*., 296 Kan. 906, 935, 296 P.3d 106 (2013).

While the parties have termed the district court's actions in awarding Carolyn and Peggy each one-quarter of the Trust assets as "damages," in actuality, the district court simply ordered:  "The Administrative Trustee is ordered to distribute the trust estate as provided in the original Trust agreement." The district court went on to value the trust based on Keith's accounting of the Trust assets at the time the surviving settlor died, less amounts the parties had already received. Even so, a "damages" analysis remains appropriate in determining whether the court abused its discretion in its distribution. Carolyn and Peggy were placed in the position they would have been had the Trust assets been distributed under the original provisions of the Trust at the time of last settlor's death.

It is true that agricultural property can fluctuate in value, but Keith and Allen have not explained why Carolyn and Peggy should receive less than they were entitled to under the original Trust provisions. Carolyn and Peggy's argument is persuasive; they were entitled to equal shares of the Trust assets when the surviving settlor died. It is irrelevant what happened to the Trust assets during the course of litigation. The district court did not abuse its discretion because the damages award was not arbitrary, fanciful, or unreasonable, nor based on an error of law or fact.

11

## WAS THE DISTRICT COURT'S DECISION TO AWARD ATTORNEY FEES INEQUITABLE OR INAPPROPRIATE?

Next, Keith and Allen contend that the district court abused its discretion by subsidizing Carolyn and Peggy's litigation costs. While they acknowledge that K.S.A. 58a-1004 authorizes a district court to award attorney fees for proceedings involving the administration of a trust, Keith and Allen assert—without citing legal authority—that attorney fees should only be awarded when the party seeking the award benefitted the trust.

Carolyn and Peggy argue that their actions benefitted the Trust because the resulting litigation clarified the terms of the Trust and allowed the Trust to be properly administered. They contend that the district court did not abuse its discretion when it awarded them attorney fees and allege that the district court only awarded half the requested amount.

"The 'American Rule' is well established in Kansas so that, in the absence of statutory or contractual authorization, each party to the litigation is responsible for his or her own attorney fees." *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 279, 241 P.3d 15 (2010). However, the district court may award attorney fees related to judicial proceedings involving the administration of a trust "as justice and equity may require." K.S.A. 58a-1004.

A district court's decision to award attorney fees under K.S.A. 58a-1004 is discretionary. In this context, the district court abuses its discretion if "no reasonable person would adopt the position taken by the district court." *Cresto v. Cresto*, 302 Kan. 820, 848, 358 P.3d 831 (2015). Older caselaw suggests that an award of attorney fees is reasonable if the litigation proved beneficial to the trust estate. *Moore v. Adkins*, 2 Kan. App. 2d 139, 151, 576 P.2d 245 (1978). Legal proceedings benefit an estate if questions

12

of law are resolved so the estate can be properly administered. *In re Trusteeship of the Will of Daniels*, 247 Kan. 349, 357, 799 P.2d 479 (1990). More recently, the Kansas Supreme Court took a deferential stance towards the amount of attorney fees awarded by the district court and refrained from evaluating the reasonableness of the award. *In re Estate of Somers*, 277 Kan. 761, 773-74, 89 P.3d 898 (2004) (allowing award of $111,149.93 in attorney fees but directing half be paid by remaindermen and other half be paid by current beneficiaries).

Carolyn and Peggy asked for $47,178 in attorney fees and $1,853.40 in expenses in their motion to obtain attorney fees. The district court awarded half the requested amount to be paid from the corpus of the trust. The underlying litigation resulted in the Trust being properly administered because the district court properly found that the Trust became irrevocable upon Ruth's death. Therefore, the Trust benefitted from the underlying litigation.

Keith and Allen claim they spent $50,000 of their own money and Keith spent $40,000 of trust funds on attorney fees. In terms of equity, it would be unfair to prevent the prevailing party from similarly using Trust funds to pay attorney fees. Additionally, the district court ordered a similar ratio of attorney fees to be paid to Carolyn and Peggy as the opposing party spent defending the Trust amendment. Therefore, the district court's decision to award attorney fees was fair, and a reasonable person could agree with the district court's actions. The district court did not abuse its discretion by awarding attorney fees.

Affirmed.

13