NOT DESIGNATED FOR PUBLICATION

No. 114,172

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARGIE ANN PINAIRE,
*Appellee*,

v.

SHARON K. KITCHENS,
Personally and as Trustee of the Benjamin F. Kitchens and Sharon K. Kitchens Trust,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; MERLIN G. WHEELER, judge. Opinion filed June 24, 2016. Affirmed.

*Nathanael W. Berg*, of Hampton & Royce, L.C., of Salina, for appellant.

*Craig J. Altenhofen*, of Altenhofen & Alt, Chartered, of Junction City, for appellee.

Before ARNOLD-BURGER, P.J., SCHROEDER, J., and JEFFREY E. GOERING, District Judge, assigned.

*Per Curiam*: Margie Ann Pinaire, Benjamin F. Kitchens' daughter, filed suit against Sharon K. Kitchens for failing to distribute $25,000 as directed by the Benjamin F. Kitchens and Sharon K. Kitchens Trust (the Trust). Sharon appeals the district court's determination the trust she terminated after the death of her husband, Benjamin Kitchens, was a contractual trust between her and Benjamin that required her to carry out the Trust distributions for the benefit of Benjamin's three children. Sharon also claims K.S.A. 58a-406(b) invalidates the distribution to Pinaire since her husband, a lawyer, drafted the

1

Trust and her distribution exceeds the intestate share of what the estate would distribute to her through intestate administration. We affirm the district court's finding this was a contract trust that requires distributions upon the death of the first to die, and now that Sharon has revoked the trust, K.S.A. 58a-406(b) does not apply.

FACTS

Benjamin and Sharon Kitchens married in 1988. At the time they were married, Benjamin had four adult children and Sharon had three adult children; they had no children together.

In 1997, the Kitchenses established the Benjamin F. Kitchens and Sharon K. Kitchens Trust (the Trust). Three of Benjamin's four children, including Pinaire, and all of Sharon's children were beneficiaries of the Trust. Pinaire's husband drafted the Trust. The Trust established that, upon the death of the first Grantor to die, the trustee "shall distribute the total sum of $150,000 out of the [T]rust estate forthwith," divided evenly between the first to die's listed children. Since Benjamin was 14 years older than Sharon, the Kitchenses expected him to die first. Upon the death of the second Grantor to die, another $150,000 would be divided evenly between the second Grantor to die's children and any remaining assets would be divided evenly between all six children. Benjamin and Sharon would act as trustees. Pursuant to Section IX, the Trust was revocable at any time. Most of Benjamin and Sharon's assets were transferred to the Trust in order to fund it.

In 2011, the Kitchenses amended the Trust. Pinaire's husband drafted the Trust amendment. Pursuant to the Trust amendment, "[e]xcept as hereafter provided, upon the death of the Grantor, Benjamin F. Kitchens, the Trustee shall distribute, from the [T]rust estate" $100,000 or property equaling $100,000 to each of Benjamin's children. The

Trust amendment contained a similar provision for Sharon's death. Following the death of the last Grantor to die, each child would receive 1/6 of the residue.

Each of Benjamin's three children received a $75,000 advance (one child received approximately $75,000 in property) prior to Benjamin's death.

Benjamin died on December 25, 2011. After his death, Sharon discovered Benjamin's federal employees group life insurance policy had not been transferred into the Trust. Only Benjamin's three children were the beneficiaries of the policy. Each of his three children received $16,000 from the policy. From the $25,000 still owed to each of Benjamin's kids, Sharon deducted the $16,000 they received from the life insurance policy, as well as attorney fees and Benjamin's funeral expenses. She sent each of Benjamin's children a check for $2,007.82.

Pinaire filed suit against Sharon personally and as trustee, for failing to pay $25,000 as directed by the Trust. Sharon moved for summary judgment. The district court granted summary judgment as to Sharon in her capacity as trustee but denied the motion for summary judgment in Sharon's individual capacity. Both parties then filed competing motions for summary judgment. Sharon argued the Trust provision to Pinaire was invalid pursuant to K.S.A. 58a-406(b). Pinaire argued the Trust was contractual and Sharon was obligated to pay her the remaining $25,000. The district court found the Trust evidenced a clear and unambiguous contract to provide for immediate distributions to the children of the first grantor to die and Pinaire was entitled to $25,000.

Sharon timely appeals.

3

ANALYSIS

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014). The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. 298 Kan. at 759. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. 298 Kan. at 759. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. 298 Kan. at 759.

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). A disputed question of fact which is immaterial to the issue does not preclude summary judgment. 296 Kan. at 935. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment.

*The district court did not err when it determined the Trust was contractual.*

Since the Trust was revocable at any time, Sharon argues the district court erred when it determined the Trust was contractual. Pinaire argues the district court correctly found the Trust was the product of a contract between the Kitchenses that was enforceable against Sharon.

4

The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. *Mangels v. Cornell*, 40 Kan. App. 2d 110, 112-13, 189 P.3d 573 (2008). The same rules that apply to the construction of wills apply to the construction of trusts and most other written instruments. *Boucek v. Boucek*, 297 Kan. 865, 874, 305 P.3d 597 (2013). A trust may be both contractual and testamentary in nature. See *Reznik v. McKee, Trustee*, 216 Kan. 659, 671, 534 P.2d 243 (1975). If a trust is contractual, its provisions may be enforced as a contract against the estate even after the trust is revoked. See 216 Kan. at 671. Seven factors can help this court identify whether a trust is contractual in nature:

> "(1) A provision in the will for a distribution of property on the death of the survivor;
> "(2) a carefully drawn provision for the disposition of any share in case of a lapsed residuary bequest;
> "(3) the use of plural pronouns;
> "(4) joinder and consent language;
> "(5) the identical distribution of property upon the death of the survivor;
> "(6) joint revocation of former wills; and
> "(7) consideration, such as mutual promises." *Mangels*, 40 Kan. App. 2d at 116.

These factors support an interpretation of the Trust as contractual. Section II.E of the Trust is a provision for the distribution of property on the death of the survivor. In the event a beneficiary predeceases the Kitchenses, the distribution goes to the beneficiary's descendants, and if there are no descendants, is divided between the remaining siblings. Section IV, titled "Separation of Assets and Prenuptial Agreement," uses joinder and consent language. The Trust provided identical provisions upon the death of the survivor: the survivor's natural children would receive $100,000, like the $100,000 received by the first to die's natural children, and any remaining funds would be split between all six children.

5

Further, the language of the Trust suggests it is contractual in nature. *Reznik* is analogous. In *Reznik*, H.W. Cardwell and Katherine S. Cardwell executed two separate instruments settling their entire estate. Each settlor reserved the right to alter, amend, or revoke the trust. H.W.'s trust specifically made no provision for distributions to their children because his wife's trust provided for their children. Katherine's trust specifically indicated it made no provisions for distributions to their grandchildren because her husband's trust provided for their grandchildren. After Katherine died, H.W. amended his trust. His new trust did not provide anything for their grandchildren. The Kansas Supreme Court found the provisions explaining the omission of certain heirs was persuasive in determining whether the trusts were contractual. It stated: "We cannot believe a grandmother would disinherit her grandchildren and a father would disinherit his children, unless the parties had a prior agreement that provisions made by the other spouse for the excluded children (or grandchildren) would be binding." 216 Kan. at 675.

Here, Section II.B, as amended, states: "Except as hereafter provided, upon the death of the Grantor, Benjamin F. Kitchens, the Trustee *shall* distribute, from the [T]rust estate," certain funds to Benjamin's children. (Emphasis added.) Section II.C, as amended, contains nearly identical language requiring the Trustee to distribute funds from the Trust estate to Sharon's children following her death. If anything remained "[f]ollowing the death of the last Grantor to die, and after all of the aforesaid distributions have been made," the remainder of the Trust was to be evenly distributed between the six children. Further, Sharon admitted the Trust accurately reflected what she and Benjamin decided regarding the formation of the Trust. While Section IX reserved the right to revoke, alter, or amend the Trust, we do not believe these provisions in Section II would be included in the Trust if the Kitchenses contemplated and believed the survivor could immediately revoke the provisions upon the death of the first settlor to die, leaving the children of the deceased with nothing.

6

Further, while all of the provisions are subject to the reservations in Section IX, other sections indicate they are subject to the distributions in Section II. For example, Section I states, in part:

> "If the Trustee(s) deems the income of said [T]rust estate to be insufficient, then the Trustee(s) shall pay to the Grantor(s) so much of the principal of the [T]rust estate established by said Grantor(s), as in the Trustee(s) discretion, shall be needed for the proper support, care and maintenance of the Grantor(s), *subject to the provisions of Section II hereof which call for a partial distribution upon the death of the first Grantor to die*." (Emphasis added.)

Similarly, Section IV, as amended, includes the following language: "Further, the surviving Grantor likewise covenants and agrees that any advance gifts or distributions made by the surviving Grantor, prior to the death of said surviving Grantor, *shall be made only in such amounts as are authorized in Section II.B. and Section II.C. hereof*." (Emphasis added.)

Read as a whole, the Trust evidences a prior agreement regarding the distribution of funds after the death of the first settlor to die. Extrinsic evidence also indicates a prior agreement regarding the distribution of funds after the death of the first settlor to die. In *Garrett v. Read*, 278 Kan. 662, 668, 102 P.3d 436 (2004), *disapproved of on other grounds by Nelson v. Nelson*, 288 Kan. 570, 205 P.3d 715 (2009), the Kansas Supreme Court stated:

> "'Extrinsic evidence is admissible in connection with the instruments themselves to show that separate wills, which are mutual and reciprocal in their bequests and devises, were executed in pursuance of an agreement between the testators, notwithstanding the absence of recitals in the wills designating or referring to such agreement. Such evidence may consist of writings, acts and declarations of the parties, testimony of other persons, and evidence of all the surrounding facts and circumstances.' *Eikmeier v. Eikmeier*, 174 Kan. 71, Syl. ¶ 1, 254 P.2d 236 (1953).

"This court has also stated that 'the rule that parol evidence is never admissible to change or vary the terms and provisions of an unambiguous will does not render inadmissible extrinsic evidence that a will was executed pursuant to an agreement.' *In re Estate of Tompkins*, 195 Kan. at 474 (citing *Eikmeier*, 174 Kan. 71, Syl. ¶ 2). 'The admission of such evidence may result in proving the will to have been non-contractual as well as contractual. [Citations omitted.]' *Tompkins*, 195 Kan. at 474."

The Kitchenses agreed to give each of their children $50,000 upon the death of the child's natural parent. Likewise, the Kitchenses agreed to increase the Trust's distribution to each child upon the death of the child's natural parent. Further, prior to amending the Trust, the Kitchenses told Sharon's daughter, Nancy, "we anticipate leaving *each of you* (*all of our six children*) $100,000.00 or property of equal value." (Emphasis added.) Likewise, on June 6, 2011, the Kitchenses sent all of their kids a letter stating: "*Each child* will receive a sum greater than $100,000.00." (Emphasis added.)

Both the Trust's language and extrinsic evidence indicate the Trust was created and amended pursuant to an agreement between the Kitchenses to provide at least $100,000 to each of the six children. The district court did not err when it determined the distribution provisions of the Trust were a contractual agreement between Benjamin and Sharon.

*Was Sharon contractually bound to the full disposition?*

Sharon argues a trust is not contractual if it reserves to the survivor the power to revoke or amend at any time. Relying almost entirely on *Burrows v. Bowdre*, No. 102,828, 2010 WL 3324676 (Kan. App. 2010) (unpublished opinion), *rev. denied* 291 Kan. 911 (2011), Sharon argues: "any contract deciphered from the Trust would be illusory."

Though many of the facts are similar, *Burrows* is distinguishable. In *Burrows*, Everett and Suzanne Burrows executed a revocable trust as joint grantors and joint trustees. Both had children from previous marriages. The beneficiaries were not entitled to any distributions until after the death of the second settlor, and the surviving grantor could use "all remaining assets for his/her health, welfare or benefit, in his/her absolute discretion and without restrictions." 2010 WL 3324676, at *2. After Everett's death, Suzanne filed a petition for declaratory relief regarding her ability to revoke the trust. The children argued the trust was contractual and Suzanne was bound by the trust's terms. The district court found the trust was not contractual and determined the surviving grantor could dispose of the trust property after the other had died. The children appealed. A panel of this court acknowledged the Burrows' trust contained contradictory language but determined: "[W]hile the trust clearly contains language indicative of a contractual agreement between Everett and Suzanne, the contractual language of the trust is illusory because the plain language of the trust clearly holds neither party to any obligation." 2010 WL 3324676, at *3. The panel distinguished a general right to revoke from the specific right to revoke found in the Burrows' trust, and concluded:

> "Based upon the plain language of the trust, neither Everett nor Suzanne was bound by any promise to the other regarding the disposition of their assets. To the contrary, the trust clearly demonstrates an intent to attach as few restrictions as possible upon their use and disposition of the property during their lifetimes. The trust provided for distribution of the property to Children as a contingency upon the death of both Everett and Suzanne without further disposition, but the plain language of the trust demonstrates that Everett and Suzanne had no intent to remain inextricably bound to distribute their property in equal shares to Children, per stirpes. The district court correctly held that the trust was fully revocable by Suzanne." 2010 WL 3324676, at *5.

Like the trust in *Burrows*, here, the Trust contained a specific right to revoke, alter, or amend the Trust. Section IX of the Trust reads, in relevant part:

9

"The Grantors jointly reserve the following rights during either his/her/their lifetime, and all of the provisions of this Indenture are made subject to the reservation of these rights:

". . . .

"C. Without the consent of the Trustee(s) or anyone else, to revoke this Indenture and terminate the [T]rusts hereby created, by written instrument of revocation signed by either of the Grantors and delivered to the Trustee(s).

"D. With the consent of the Trustee(s), to change, alter, amend or modify this Indenture, or any part hereof, at any time or times, by written instrument signed by both Grantors while living or by the surviving Grantor if one predeceases the other."

However, *Burrows* is distinguishable because the plain language of the Trust indicates Benjamin and Sharon intended a partial distribution of Trust assets upon the death of the first to die. Pursuant to Section I of the Trust, the trustee's ability to pay out the Trust's principal was "subject to the provisions of Section II hereof which call for a partial distribution upon the death of the first Grantor to die." Further, "*upon the death of the Grantor*, Benjamin F. Kitchens, the Trustee *shall* distribute" funds from the trust estate to Benjamin's children. (Emphasis added.) Sharon became obligated to make the partial distribution because the Trust provisions were not altered, amended, or revoked prior to Benjamin's death. Additionally, the Trust provided the survivor could make distributions from the Trust to her children during the survivor's life but limited the distributions to $100,000—equal to the benefit received by the first to die's children. The district court did not err when it granted Pinaire judgment for $25,000.

*K.S.A. 58a-406(b) does not void the distribution to Pinaire.*

Sharon argues Pinaire is not entitled to any funds pursuant to K.S.A. 58a-406(b) because Pinaire's husband drafted the Trust containing the provision granting Pinaire $100,000. In contrast, Pinaire argues K.S.A. 58a-406 is irrelevant because that statute

has no bearing on whether the Trust was contractual; and regardless, Sharon has already revoked the Trust.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc*., 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. 301 Kan. at 918. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 298 Kan. at 738-39.

K.S.A. 58a-406 states:

"(a) A trust is void to the extent its creation was induced by fraud, duress, or undue influence.
"(b) Any provision in a trust, written or prepared for another person, that transfers property and that gives the writer or preparer or the writer or preparer's parent, children, issue, sibling or spouse any direct or indirect benefit is invalid unless: (1) The writer or preparer is related to the settlor by blood, marriage or adoption and the benefit is not more than the writer or preparer or the writer or preparer's parent, children, issue, sibling or spouse would receive under the laws of intestate succession, if the transfer or benefit passed in that manner; or (2) it affirmatively appears that the settlor had read or knew the contents of the trust and had independent legal advice with reference thereto. The words 'children' and 'issue' as used in this section, are defined in K.S.A. 59-501, and amendments thereto."

The plain language of K.S.A. 58a-406(b) suggests the Trust distribution to Pinaire is likely invalid as Pinaire has not asserted an exception applies. Sharon argues this is

where the analysis should end—Pinaire is not entitled to anything since the Trust was written by Pinaire's husband. Sharon therefore argues the Trust provision to Pinaire is invalid. Pinaire argues K.S.A. 58a-406(b) does not address contracts between settlors of a revocable trust respecting the disposition of their property.

We find Pinaire's argument persuasive. First, there are no Kansas cases applying K.S.A. 58a-406 after a trust has been revoked. Second, Sharon's argument conflates a "contractual trust" with a contract to enforce a trust as a trust. This is inaccurate. In *Reznik*, the Kansas Supreme Court stated:

> "It was recognized long ago that a single instrument may be both a will contractual in nature, and a contract testamentary in nature; as a will it is revocable but as a contract it is enforceable; and although a contractual will revoked by execution of a second will, cannot be probated, it may nonetheless be enforced *as a contract* against the estate of the testator breaching it (*Menke v. Duwe et al.*, 117 Kan. 207, 216, 230 P. 1065 [1924])." (Emphasis added.) *Reznik*, 216 Kan. at 671.

A trust may be revocable as a trust, but still enforceable as a contract. The Trust is not enforceable as a trust, and Sharon cannot be liable as trustee; she revoked the Trust. However, Sharon may be individually liable for breaching the agreement the Trust clearly evidenced.

Sharon contends K.S.A. 58a-406(b) should apply even if a trust is contractual since "[t]he whole purpose of the statute is to protect parties from a potential beneficiary with a law degree and a pen." Again, this argument is unreasonable and conflates a contractual trust with enforcement of a trust. Where a trust evidences a contractual agreement—here, to disperse $100,000, less advances, to the Grantor's children upon the Grantor's death—it should not matter who drafted the Trust. Further, this argument ignores the fact that, at least in this case, Sharon agreed the Trust accurately reflected

12

how she and Benjamin wanted and agreed to provide for their children after the death of the first to die and the second to die.

Finally, Sharon argues the provisions of K.S.A. 58a-406 should apply to all contractual trusts since enforcing the provisions of an invalid trust as a contract would lead to ridiculous results if the trust was void under K.S.A. 58a-406(a) due to fraud, duress, or undue influence. However, fraud, duress, and undue influence are also defenses to contract formation. See *Nordstrom v. Miller*, 227 Kan. 59, Syl. ¶ 10, 605 P.2d 545 (1980) (fraud, duress); *Cersovsky v. Cersovsky*, 201 Kan. 463, 467, 441 P.2d 829 (1968) (undue influence). K.S.A. 58a-406 is unnecessary to protect against enforcement of a contractual trust when the trust is the result of fraud, duress, or undue influence; defenses to contract formation are sufficient.

K.S.A. 58a-406 does not apply to invalidate the gift to Pinaire simply because her husband drafted the Trust. The district court did not err.

*Sharon has failed to provide evidence establishing a mutual mistake.*

As a preliminary matter, Pinaire argues Sharon's "affirmative defenses of breach of contract, promissory estoppel and mistake are curious considering that [Sharon] has consistently denied the existence of a contract between [Sharon] and Benjamin F. Kitchens in regard to the Kitchenses' trust." However, K.S.A. 2015 Supp. 60-208(d)(3) states: "A party may state as many separate claims or defenses as it has, regardless of consistency." Sharon is not prohibited from arguing the Trust is not contractual while also arguing defenses to contract formation.

Sharon contends Benjamin told her he transferred the life insurance policy into the Trust and that this was a genuine issue of material fact precluding summary judgment.

13

She relies on her affidavit and "Ben's handwritten notes of the Trust's assets" to establish a genuine issue of material fact.

Unfortunately, this evidence is insufficient to preclude summary judgment. First, "Ben's handwritten notes of the Trust's assets" is titled: "Net Worth Recap Date _____ (Ben and Sharon Kitchens)." Second, the notes are barely legible and do not appear to reference the Trust anywhere. There is nothing (legible) to indicate the listed assets are Trust assets. The notes are insufficient to establish a genuine issue of material fact.

Similarly, Sharon's affidavit stated, in part:

"4. Ben told me that the $48,000.00 [Federal Employees Group Life Insurance (FEGLI)] policy on Ben's life would be changed to provide the Trust as the beneficiary.
"5. Ben told Dick Pinaire in my presence that the life insurance policy would be transferred to the Trust.
"6. Ben told me that he had changed the $48,000.00 FEGLI policy to list the Trust as a beneficiary.
"7. I believed that the $48,000.00 FEGLI policy on Ben's life had been changed to provide the Trust as the beneficiary.
"8. I transferred all of my life insurance to the Trust because it was Ben and my plan to transfer all life insurance to the Trust."

Pursuant to K.S.A. 2015 Supp. 60-256(e)(2), a motion for summary judgment may be opposed by affidavit. K.S.A. 2015 Supp. 60-256(e)(1) states, in relevant part: "A supporting or opposing affidavit or declaration must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." There is no question Sharon's affidavit was made on personal knowledge. Likewise, there is no question Sharon is competent to testify on the stated matters.

14

The only question, then, is whether the affidavit sets out facts that would be admissible in evidence. It does not. Benjamin's statements are hearsay. See K.S.A. 2015 Supp. 60-460 ("Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible."). The only potentially applicable exception to the hearsay rule is K.S.A. 2015 Supp. 60-460(l) which states, in relevant part:

"Unless the judge finds it was made in bad faith, a statement of the declarant's (1) then existing state of mind, emotion or physical sensation, including statements of intent, plan, motive, design, mental feeling, pain and bodily health, *but not including memory or belief to prove the fact remembered or believed*, when such a mental or physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant." (Emphasis added.)

The statements in Sharon's affidavit attributable to Benjamin do not establish a genuine issue of material fact. While the statements tend to show the failure to transfer the insurance policy to the Trust was a mutual mistake, they are inadmissible hearsay. Crucially, the statement that Benjamin had changed the insurance policy to reflect the Trust as beneficiary is inadmissible to show Benjamin believed the Trust was the beneficiary of the insurance policy. Without this statement, Sharon has not established a genuine issue of material fact regarding whether Benjamin believed the Trust was the beneficiary of the life insurance policy.

Neither Benjamin's handwritten notes nor Sharon's affidavit establish a genuine issue of material fact. As a result, summary judgment was appropriate.

Affirmed.

15